## COMMONWEALTH vs. LANCE A. WILKINSON.

Plymouth. April 6, 1993. - June 3, 1993.

Present: LIACOS, C J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Extradition and Rendition. Bail. Kidnapping. Common Law. Practice, Criminal,* Retroactivity of judicial holding.

The Uniform Criminal Extradition Act, G. L. c. 276, §§ 11-20R, abrogated the common law right of an agent of an out-of-State bail bondsman to apprehend and forcibly remove from the Commonwealth a fugitive who had broken the terms of his bail and fled to Massachusetts. [404-407]

A defendant charged with kidnapping and assault and battery by means of a dangerous weapon would be entitled to raise the affirmative defense that he acted with lawful authority, in that, as the agent of an out-of-State bail bondsman, he had the right at common law and without regard to the requirements of the Uniform Criminal Extradition Act (Act), G. L. c. 276, §§ 11-20R, to apprehend and forcibly remove from the Commonwealth a fugitive who had broken the terms of his bail and fled to Massachusetts; the holding of this court that the Act abrogated this common law right was restricted to prospective application. [407-408]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1989.

A pretrial motion was heard by *Cortland A. Mathers,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Jean-Claude Sakellarios,* of New Hampshire, for the defendant.

*Eileen M. Sullivan,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Lance A. Wilkinson, was indicted on May 30, 1989, for kidnapping and for assault with

a dangerous weapon on one Danny Lee Nole. Prior to trial, the Commonwealth filed a motion to preclude the defendant from raising an affirmative defense of "lawful authority" at trial and further requested that the jury be instructed on the requirements of G. L. c. 276, §§ 11-20R (1990 ed.), the Uniform Criminal Extradition Act (Act). The defendant objected, arguing that he was the agent of a bail bondsman and, as such, had a common law right to apprehend and remove Nole from the Commonwealth without regard to the requirements of the Act. A Superior Court judge allowed the Commonwealth's motion, concluding that a bondsman from another State seeking to apprehend and remove a person located in Massachusetts to any other jurisdiction must first comply with G. L. c. 276, § 20A or §. 20B. He then reported the case and four questions to the Appeals Court, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We granted the defendant's application for direct appellate review.

The judge in his report found the following facts. The defendant is the agent of an Oklahoma bail bondsman. After entering into a contract with the Oklahoma bondsman, Nole pleaded guilty and while awaiting sentencing, broke the terms of his bail and fled to Massachusetts. On April 30, 1988, the defendant apprehended Nole in Pembroke, and transported him against his will to New Hampshire and the following day to Oklahoma, where he was surrendered to the appropriate authorities.

"Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of his finding or order. [See Mass. R. Crim. P. 34, 378 Mass. 905 (1979).] Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue." *Commonwealth* v. *Connor*, 381 Mass. 500, 501 n.1 (1980), quoting *McStowe* v. *Bornstein*, 377 Mass. 804, 805 n.2 (1979).

The four questions reported by the judge are set out below.[1]

At common law, a bail bondsman, or "surety," could seize a bailed individual, or "principal," for surrender at any time without resort to the legal system. *Taylor* v. *Taintor*, 83 U.S. (16 Wall.) 366 (1872). *Commonwealth* v. *Brickett*, 8 Pick. 138 (1829). This right was held to follow the principal over State lines, and a surety could arrest his principal in any State and surrender him to the State where the principal was charged without new process. *Id.* In 1937, the Legislature adopted with minor revisions the Uniform Criminal Extradition Act.[2] See St. 1937, c. 304. The provisions of the Act

---

[1] "1. Whether the defendant may present as an affirmative defense at his trial for kidnapping that, as an agent of an Oklahoma bailbondsman, he possessed the lawful authority to apprehend and remove [Nole] from the [C]ommonwealth without complying with Massachusetts' Procedure on Interstate Rendition, G. L. chapter 276, Sections 11-20R.

"2. Where, as here, neither the statute at issue nor existing case law clearly indicate that an out-of-state bail bondsman and his agents must comply with the requirements of the Commonwealth's Interstate Rendition Act when seeking to exercise custody for purposes of surrender, does the imposition of the Act in this case violate constitutional due process guarantees, particularly with respect to adequate notice that the conduct at issue was proscribed?

"3. Similarly, does the imposition of the requirements of the Interstate Rendition Act on the defendant in the case amount to an application of law, in violation of Article I, s. 10 of the United States Constitution?

"4. Does the imposition of the requirements of the Interstate Rendition Act on a foreign bailbondsman and his agents who seek to obtain custody for purposes of surrender so impair the bail bond contract as to violate the Contract Clause of Article I, s. 10 of the United States Constitution?"

Question 1, as reported, asked whether the defendant "possessed the lawful authority to apprehend and remove *the defendant* from the commonwealth" (emphasis added). We presume the judge intended to ask whether the defendant had the lawful authority to remove *Nole* and substituted his name.

[2] The Uniform Criminal Extradition Act has been adopted in forty-seven States and three United States territories. 11 U.L.A. 36 (Master ed. 1993 Supp.).

were to be "so interpreted and construed as to effectuate their general purpose to make uniform the law of those states enacting similar laws." G. L. c. 276, § 20R. Sections 11 through 17 of the Act establish an extradition system based on cooperation between the Governor of the Commonwealth and the executive authority of the State demanding the surrender of a fugitive. See *Maldonado, petitioner,* 364 Mass. 359, 361-362 (1973).[3] The Act also permits any credible person, such as a bail bondsman, to request the arrest of alleged fugitives with or without warrants issued by the Commonwealth. G. L. c. 276, §§ 20A & 20B (1990 ed.). Whether an arrest of a fugitive is made pursuant to a Governor's warrant, or pursuant to § 20A or § 20B, however, the Act requires that certain procedural due process protections be afforded the person arrested before he is delivered over to the authorities of the demanding State. G. L. c. 276, § 19. The question dispositive of the matter before us, therefore, is whether the Act abrogates the defendant's common law right to seize a principal within the Commonwealth for surrender in another State.

The defendant argues the language of the Act indicates that it was intended to apply only to extraditions negotiated between the Governor and the "executive authority" of another State, and that the Legislature did not intend to apply the Act to private agents of bail bondsmen. Although the Act requires that the actual transfer of a fugitive must be accomplished through the Governor of the Commonwealth and the executive authority of the demanding State, as was pointed out above, § 20A of the Act permits "any credible person" to appear before a court of appropriate jurisdiction to have a warrant issued. Additionally, § 20B[4] permits a person to

---

[3]General Laws c. 276, § 12 (1990 ed.), empowers the Governor to have a fugitive present in the Commonwealth arrested and delivered to the executive authority of the State where the fugitive stands accused. See *Murphy, petitioner,* 321 Mass. 206 (1947); *Germain, petitioner,* 258 Mass. 289 (1927).

[4]When the Legislature enacted G. L. c. 276, § 20B, it chose to omit language present in § 14 of the Uniform Criminal Extradition Act, 11

procure the warrantless arrest of a fugitive through "any officer authorized to serve warrants . . . upon reasonable information that the accused stands charged in another state with a crime . . . ." Once before the court, the fugitive must be given notice of the charges, be informed of his right to counsel, and may challenge the legality of his arrest. G. L. c. 276, § 19. The Act does apply in part to private parties such as bondsmen. Therefore, under that statute a fugitive can be surrendered pursuant to the request of a private bondsman and still be afforded the benefit of the procedural due process requirements set out in the Act.

The defendant also argues that the rights applicable to bondsmen under G. L. c. 276, §§ 68 & 69, should apply in this case. Sections 68 and 69 were enacted prior to the Act to codify the bail system within the Commonwealth. There is no suggestion in either section that the procedures were intended to apply to the extradition of fugitives who have broken the terms of their bail in another State and have fled to Massachusetts.

In construing the Act we attempt to make the law in the Commonwealth uniform with those States enacting similar laws. G. L. c. 276, § 20R. See, e.g., *Ouzts* v. *Maryland Nat'l Ins. Co.*, 505 F.2d 547, 552-553 (9th Cir. 1974), cert. denied, 421 U.S. 949 (1975) (California Penal Code totally abrogates foreign bondsman's common law right to pursue, apprehend, and remove his principal from California); *State* v. *Lopez*, 105 N.M. 538 (1986), cert. denied, 479 U.S. 1092 (1987), rev'd on other grounds sub nom. *Lopez* v. *McCotter*, 875 F.2d 273 (10th Cir.), cert. denied sub nom. *Lopez* v.

---

U.L.A. 252 (Master ed. 1974), which would allow "any peace officer or a private person" to effect a warrantless arrest of a fugitive. We conclude that the Legislature's exclusion of this language does not evince an intent to exclude private agents of bondsmen from the purview of the Act. Section 20A which allows "any credible person" to procure the arrest of a fugitive pursuant to a warrant indicates to the contrary. We read the exclusion of "private persons" from § 20B as evidence that the Legislature intended to require that foreign bondsmen seek the assistance of an "officer authorized to serve warrants" in apprehending a fugitive.

*Tonsy*, 493 U.S. 996 (1989); *State* v. *Epps*, 36 Or. App. 519 (1978).[5]

"Where 'legislation has been enacted which seems to have been intended to cover the whole subject to which it relates, it . . . supersedes the common law.'" *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 883 n.12 (1984), quoting *Salisbury* v. *Salisbury Water Supply Co.*, 279 Mass. 204, 206 (1932). In view of the foregoing we conclude that the common law right of a bondsman to seize a principal for surrender was abrogated by the Act. The result is a more efficient, predictable, and uniform method of interstate extradition. Moreover, it is a far "more civilized" process than that which simply allows the agent of a bondsman to come into the Commonwealth, forcibly seize an alleged fugitive, and remove him from the State with no procedural protections. *State* v. *Epps*, *supra* at 526.

The matter does not end there, however. "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie* v. *Columbia*, 378 U.S. 347, 354 (1964), quoting Hall, General Principles of Criminal Law at 61 (2d ed. 1960).

---

[5]The New Mexico Court of Appeals, analyzing that State's Uniform Criminal Extradition Act, determined that: "[A] bondsman may not, without consent of the principal, remove him from this state without compliance with the provisions of the Uniform Criminal Extradition Act. The purpose of this statute is to provide an orderly means of extradition, and to accord procedural due process to persons sought to be removed without consent from this state." *State* v. *Lopez*, 105 N.M. 538, 542 (1986), cert. denied, 479 U.S. 1092 (1987), rev'd on other grounds sub nom. *Lopez* v. *McCotter*, 875 F.2d 273 (10th Cir.), cert. denied sub nom. *Lopez* v. *Tonsy*, 493 U.S. 996 (1989).

Additionally, the Oregon Court of Appeals, after noting that the Oregon Legislature had repealed the statutory scheme regulating the bail system and adopted a system modeled on the Uniform Act, stated: "The legislative action was intended to eliminate the bail system and its attendant evils in favor of a more civilized system of apprehension and return of accused and convicted criminals. The common law rule is abandoned in favor of [the new Oregon bail statute] which provides judicial notice and identification safeguards which are more consistent with contemporary standards of due process." *State* v. *Epps*, 36 Or. App. 519, 526 (1978).

We have never before applied the Act in these circumstances to foreign bail bondsmen or their agents, and the provisions of the Act itself do not give adequate notice to bondsmen that their common law rights had been abrogated. Moreover, we do not agree that the New Mexico and Oregon decisions, cited *supra*, could have afforded the defendant fair warning that his actions were prohibited by the Act. See *Lopez* v. *McCotter*, 875 F.2d 273, 277-278 (10th Cir.), cert. denied sub nom. *Lopez* v. *Tonsy*, 493 U.S. 996 (1989). The decision we announce today, thus, should not be retroactively applied to the defendant. Accordingly, since the defendant did not have fair notice that his conduct was forbidden by the Act, he may offer as a defense to the charges pending against him that he possessed lawful authority to remove Nole from the Commonwealth without complying with the Act.

The matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*