Brian A. LANDRY

v.

A–ABLE BONDING INC., et al.

No. 1:92–CV–0257.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 18, 1994.

Shimon Kaplan, East Texas Legal Services, Beaumont, TX, for plaintiff.

Thomas Mulvaney, Strong, Pipkin, Nelson & Bissell, George Jamail, Bernsen, Jamail & Goodson, Beaumont TX, for defendants.

### MEMORANDUM CONCERNING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

HINES, United States Magistrate Judge.

Pending is Plaintiff's Motion to Alter or Amend Judgment.

## I. NATURE OF THE CASE

This case began with the Louisiana felony arrest of plaintiff Brian Landry in October of 1990. Landry arranged bond with defendant A–Able Bonding, Inc., and its owner, defendant Gerald Burrow. In November of 1990, plaintiff left Louisiana, defaulted on the balance of his bond premium, and did not appear for his scheduled court date. The Louisiana court of prosecution issued an arrest warrant. This warrant permitted seizure of plaintiff by A–Able Bonding "wherever found."

Defendants later located plaintiff in Port Arthur, Texas. On July 13, 1991, Burrow and two employees drove to Port Arthur, approximately 135 miles from Lafayette, Louisiana, their principal place of business. Upon finding plaintiff in the home of Norman Boudreaux, Landry's roommate and landlord, they handcuffed plaintiff without exhibition of the warrant and transported him back to Lafayette Parish Jail. Plaintiff's car, with personal possessions stowed inside, was towed from his Port Arthur residence the following day by unknown persons. This action ensued.

Plaintiff asserted claims under Title 42 U.S.C. § 1983 for the deprivation of liberty and property without due process of law. He invoked supplemental jurisdiction and furthered state law claims of conversion of property and false imprisonment or kidnapping.

On May 9, 1994, this court issued an opinion in which it found the § 1983 claims failed because defendants were purely private actors, and had proceeded without color of state law. Plaintiff's claim of conversion also failed because he could not prove by a preponderance of the evidence that any defendant towed his car from Port Arthur. Lastly, plaintiff's false imprisonment claim failed for the proof of actual damages.

## II. PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

The motion to alter or amend the judgment with regard to plaintiff's state law claim for false imprisonment, pursuant to Federal Rule of Civil Procedure 59(e), followed. Plaintiff argues entitlement to nominal damages under Texas law for the imposition of an intentional tort. Defendants concede intentional torts are compensable in this manner under Texas state law, but attack jurisdiction of this court to determine the claim.

## III. DISCUSSION

### A. Jurisdiction

■ Defendants argue this court lacks jurisdiction pursuant to Title 28 U.S.C. § 1332. They advance a rationale premised on plaintiff's citizenship as stated in the Louisiana criminal record and the ultimate recovery, which was less than the $50,000 jurisdictional amount required by federal statute. While this court concluded in its September 28, 1992 memorandum that plaintiff properly invoked diversity jurisdiction, a challenge at this late juncture certainly is within defendants' rights. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

■ Ascertaining federal diversity jurisdiction is two part process. *See* 28 U.S.C. § 1332(a)(1). First, the parties must have diverse citizenship, and second, there must exist an amount in controversy in excess of $50,000. *Id.* The relevant time for establishing both citizenship and the amount in controversy is the commencement of the action. *Freeport–McMoRan Inc. v. K.N. Energy, Inc.,* 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); *St. Paul Mercury Indem. Co. v. Red Cab Co.* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ Citizenship and domicile are equivalent terms in the jurisdictional determination. *Stine v. Moore,* 213 F.2d 446 (5th Cir.1954). "The definition of 'domicile' has not changed from that set forth more than a century ago by the Supreme Court: ' "[a] residence at a particular place accompanied with positive or presumptive proof of an intention to remain for an unlimited time." '" *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 555 (5th Cir.1985) (citing *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 352, 22 L.Ed.

584 (1875) (quoting *Guier v. O'Daniel,* 1 Binn. 349, n.)).

■ Defendants, as a corporation with a principal place of business in Louisiana and an individual with all substantial contacts therein, are clearly Louisiana citizens. Characterization of plaintiff's citizenship might be somewhat more difficult if the parties had not stipulated prior to trial that Landry was a citizen and resident of the State of Texas. *See* Joint Final Pretrial Order at 6. Challenge of this stipulation is unwarranted. Complete diversity continues to exist between the parties.

■ The amount in controversy in a diversity action must exceed $50,000. 28 U.S.C. § 1332. Because jurisdiction is determined at the onset of litigation, subsequent events, including actual recovery, do not divest the court of jurisdiction. *See Carlton v. BAWW, Inc.,* 751 F.2d 781, 785 (5th Cir.1985).

■ The correct test is whether it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co,* 303 U.S. at 288, 58 S.Ct. at 590; *Burns v. Anderson,* 502 F.2d 970 (5th Cir.1974).

■ Plaintiff initiated suit for $150,000, plus punitive or exemplary damages, costs, and attorneys' fees. Based on the magnitude of his constitutional violation claims, and the conversion of his property, valued at $4500, it is not inconceivable the plaintiff could have recovered more than $50,000. *See, e.g., Brown v. Robinson,* 747 S.W.2d 24, 27 (Tex. App.—El Paso 1988, no writ) ($120,000 awarded for mental anguish incurred during false imprisonment); *Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619 (Tex.App.— Corpus Christi 1983, no writ) ($50,000 recovered more than a decade ago in false imprisonment claim).

### B. The Choice of Law

■ A federal court sitting in diversity jurisdiction must apply substantive state law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In its opinion of May 9, 1994, this court assumed without deciding Texas law governed this action because "[n]o prejudice results [with such a choice of law] because plaintiff receives the benefit of the doubt, while defen-

dant ultimately prevails." *Landry v. A–Able Bonding,* No. 1:92–CV–0257, at 18, 1994 WL 575480, at *8 (E.D.Tex. filed May 9, 1994). Such an approach now is inappropriate. The court definitively must decide whether Texas or Louisiana law governs the parties.

■ The first premise of a conflicts of law analysis is the application of the forum state's own choice of law rules. *Brown v. Cities Serv. Oil Co.,* 733 F.2d 1156 (5th Cir. 1984). Texas applies the substantive law of the state with the most significant relationships to the facts and circumstances surrounding the litigation. *Id.; Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979). Sections 6 and 145 of the Restatement (Second) of Conflicts delineate the parameters of choosing the state with the most significant relationship in a tort action. *Thomas v. NA Manhattan Bank,* 994 F.2d 236 (5th Cir. 1993), *reversed in part on other grounds,* 1 F.3d 320 (5th Cir.1994). Section 145 counsels the court to consider the place where the injury occurred, the place where the conduct that caused the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the parties' relationship was centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). Section 6 considers the application of these factors to several policy considerations including:

(1) The needs of the interstate and international system;

(2) The relevant policies of the forum;

(3) The relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;

(4) The protection of the justified expectations of the parties;

(5) The basic policies underlying the particular field of law; and

(6) Certainty, predictability, and uniformity of result.

*Id.* § 6.

■ Clearly, the injury and conduct occurred in the forum state and home of the plaintiff, Texas. Louisiana is the center of the parties relationship, the situs of the con-

tract execution and negotiation, and defendants' state of citizenship.

With regard to the relevant policies of each state, Louisiana has a significant interest in ensuring fugitives from its justice system are retrieved and brought before its courts to answer for their crimes. This interest has expanded significantly in recent years. Many states have turned to modern media and popular television programs to apprehend their "most wanted" fugitives. Others have begun discussion of the abolition of court directives which allow only ten percent bond deposits. *See, e.g.,* Jay Romano, *Defendants Increasingly Skip Bail,* N.Y. TIMES, Dec. 22, 1991, at NJ1 (documenting New Jersey's surging fugitive rate, which averages 56% of the state's total criminal case load and over 70% in some counties). Furthermore, Louisiana has an interest in insuring parties engaging in bail contracts realize their legitimate contractual expectations.

Texas' interest centers on the protection of the homes and personage of its citizens from seizure by others without resort to judicial intervention. Such a consideration is of great historical import, one that began with the authorship of our United States Constitution. *See* U.S. CONST. amend IV. Modern concerns for efficiency in law enforcement and the rising tide of crime make the balance of the remaining concerns of Louisiana with that of Texas a close question. However, upon review of the issue and consideration of the historical and modern import of both, there exists a narrow margin in favor of the forum's interest.

In addition, other courts have found that in cases of false imprisonment, the state where the imprisonment occurred was more significant than other states. *See, e.g., King v. Otasco, Inc,* 861 F.2d 438 (5th Cir.1988) (application of Mississippi's most significant relationship test favors application of California law, as arrest giving rise to action occurred in California); *Clark v. Skaggs Cos., Inc.,* 724 S.W.2d 545 (Mo.Ct.App.1986) (same result under Missouri most significant relationship test). Application of Texas law also will support uniformity and certainty of result, as the situs of the alleged wrong is an easily ascertained and singular site, as opposed to the

many places where a contract may be negotiated and executed over the course of dealing.

Texas therefore has the most significant relationship to the parties and its law will govern the decision of this motion.

## C. The Conduct and Damages

This court, in its May 9 decision, found the plaintiff's claim for false imprisonment failed for proof of actual damages. This conclusion was based on *Gladden v. Roach,* 864 F.2d 1196 (5th Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989), which stated absent actual damages for false imprisonment, plaintiff could not prevail.

■ The pending motion has brought to this court's attention that a plaintiff who brings an action under Texas law for false imprisonment may recover nominal damages upon proof of unlawful restraint. *Whirl v. Kern,* 407 F.2d 781 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). *Whirl v. Kern* conflicts with the later decision of the Fifth Circuit in *Gladden* in that *Whirl* holds nominal damages are recoverable for the intentional tort of false imprisonment. *Id.* at 798 (stating nominal damages are recoverable for false imprisonment and "perhaps in some circumstances that is all a man's freedom is worth, but though the pricetag be a bargain, freedom is never valueless."). However, only an *en banc* panel of the Fifth Circuit may overrule another panel. *See Paura v. United States Parole Comm'n,* 18 F.3d 1188, 1190 (5th Cir.1994) (stating "[n]o rule is more firmly settled in our Circuit"); *Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 n. 2 (5th Cir.1992); *Pruitt v. Levi Strauss & Co.,* 932 F.2d 458 (5th Cir. 1991). Because an *en banc* panel did not decide *Gladden, Whirl* remains the controlling precedent. *See Smith,* 960 F.2d at 459 n. 2.

■ Because plaintiff may recover nominal damages under Texas law for false imprisonment, this court must resolve whether such an imprisonment took place. In Texas, false imprisonment transpires when there is a willful detention, without consent of the detained, and without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d

374, 375 (Tex.1985); *Pizza Inn, Inc. v. York,* 658 S.W.2d 274, 276 (Tex.App.—1st Dist. 1983, no writ).

■ The first two elements of false imprisonment easily are satisfied by the facts before the court. There was a willful detention of plaintiff via his seizure and transport. The presence of handcuffs and denial of plaintiff's request for his shoes before leaving the Port Arthur residence indicate he did not consent to travel with defendants. *See Linder v. State,* 734 S.W.2d 168, 170 (Tex.App.—Waco 1987, no writ) (presence of handcuffs and shotgun vitiate proffer of consent as defense to criminal imprisonment). The ultimate issue therefore is whether a person with a valid out-of-state arrest warrant and contract executed by the parties authorizing surrender, acts with lawful authority when he seizes a person without resort to the procedures of this state. *See* WILLIAM V. DORSANEO, 14 TEXAS LITIGATION GUIDE § 331.04(2)(b) (1977 and Supp.1994) ("A valid warrant or subpoena is not ... an impervious shield. Even clothed with a legal warrant, a peace officer or other authorized person may be guilty of false imprisonment by executing the warrant in an unlawful manner.").

Defendants possessed a lawfully obtained Louisiana arrest warrant when they took Landry into their custody. *See* LA.CODE CRIM.PROC.ANN. art. 338 (West 1994) (authorizing a surety to arrest a bond principal for surrender to authorities); LA.CODE CRIM. PROC.ANN. art. 214 (authorizing a private citizen to conduct an arrest). Defendants also submit the contract executed between plaintiff and A–Able Bonding authorized seizure in the event of default. *See* Exhibit 27, International Fiduciary Insurance Co. Application for Appearance Bond (stating "principal ... shall have the right to apprehend, arrest, and surrender the principal to the proper officials at any time as provided by law.").

This court concluded in its May decision that "[a]lthough Louisiana law authorized Burrow's conduct, and a Louisiana court issued a bench warrant, the state's nexus with the challenged action stopped there." *Landry,* at 15, 1994 WL 575480, at *6. Conse-

quently, defendants had not acted under the color of state law. The ensuing analysis, which concludes the presence of the warrant and application of Texas statutes arguably indicates the authority of law, does not alter in any way disposition of plaintiff's federal civil rights claims. Clearly, whether one operates "under the color of state law" is measured by a federal standard, while acting "without authorization of law" involves a state analysis. Therefore, the two are not necessarily mutually exclusive.

Texas law contains a myriad of statutes applicable to sureties, warrantless arrests by private persons, and extradition. Arrest of principal in Texas may be effectuated in two ways. The first is utilized when the principal consents to surrender. *See* TEX.CODE CRIM. PROC.ANN. art. 17.16 (Vernon 1977 & Supp. 1994). When the principal is unwilling, Texas state law requires the bond surety to obtain permission from a Texas court to surrender the principal. If permission is granted, the court issues a warrant for the arrest of the accused. Execution of the warrant by a peace or security officer or a licensed private investigator must ensue. *See id.* art. 17.19.

This court stated in its May 9 opinion that "[p]laintiff's evidence at best may demonstrate that he was taken into custody by means of procedures not in compliance with state law technicalities embodied by TEX. CODE CRIM.PROC. art. 17.19." Plaintiffs proffer two Texas cases in support of their motion for amendment of the judgment about this statement. *See Linder,* 734 S.W.2d 168; *Austin v. State,* 541 S.W.2d 162 (Tex.Crim. App.1976). These cases are distinguishable from the one at hand for several reasons. Both deal with in-state sureties. In *Austin,* the bail bondsman did not procure an arrest warrant from any sovereign. *See Austin,* 541 S.W.2d at 162. In *Linder,* the warrant secured failed to name the bail bondsman as a person authorized to arrest the surety. *Linder,* 734 S.W.2d at 169. Neither of these situations present themselves and thus render these precedents inapplicable.

■ The Texas Code of Criminal Procedure, Art. 17.19(a) states, "Any surety, desir-

ing to surrender his principal, may file an affidavit of such intention before the court or magistrate *before which the prosecution is pending.*" TEX.CODE CRIM.PROC.ANN. art. 17.19(a) (emphasis added). If the magistrate is unavailable, the action may proceed before "any other magistrate *in the county.*" TEX. CODE CRIM.PROC.ANN. art. 17.19(c) (emphasis added). Because no Texas prosecution was pending against plaintiff, one must wonder where defendants could have complied with this statute. This logic, coupled with the dearth, or rather, void of case law applying art. 17.19 to out-of-state bail bondsmen, leads this court to conclude this provision of Texas law is not applicable to out-of-state bail bondsmen.

Defendants acted upon a valid Louisiana arrest warrant and contract authorizing the return of Landry to Louisiana. Clearly, had defendants arrested plaintiff in Louisiana, they would have been authorized by law. *See, e.g., Patin v. Duplessis Pontiac–Buick–GMC Trucks, Inc.,* 632 So.2d 790 (La.Ct.App. 1993) (false imprisonment may only occur without legal process of under a warrant that is void on its face). In Texas, a private person may effectuate an arrest if probable cause exists to believe the arrested is wanted for a felony or capital crime in another state. *See* TEX.CODE CRIM.PROC.ANN 51.13 §§ , 14. The Texas Uniform Criminal Extradition Code authorizes these warrantless arrests and delineates the extradition proceedings when a fugitive is arrested in Texas. It is questionable, however, whether the failure to institute extradition proceedings in this case vitiates the authority of law.

One published case addresses analogous facts but dissimilar state law. *See Commonwealth v. Wilkinson,* 415 Mass. 402, 613 N.E.2d 914 (1993). In *Wilkinson,* the Massachusetts Supreme Court found that an Oklahoma bail bondsman violated the Massachusetts Uniform Criminal Extradition Act when he failed to institute extradition proceeding, even though a valid Oklahoma warrant existed. Most notably, the state court

unequivocally stated Massachusetts's failure to adopt § 14 should lead the court to "read the exclusion of 'private persons' from [the Act] as evidence that the Legislature intended to require foreign bondsmen to seek assistance of an 'officer authorized to serve warrants' in apprehending fugitives." *Id.* at 405 n. 4, 613 N.E.2d 914. Furthermore, the holding in *Wilkinson* was of such novel origin that the court realized its interpretation did not afford the public adequate notice that the behavior described was prohibited and therefore did not apply it to the defendant. Because Texas has adopted § 14, it is not illogical to conclude the opposite result is true in this state.

This court's analysis must answer the following question: if defendants were authorized by Louisiana law, via the contract, the warrant, and by Texas's § 14, then were defendants acting contrary to Texas law when they drove plaintiff to Louisiana, rather than initiating extradition proceedings?[1] Case law indicates resort to extradition procedures may be unnecessary under § 14, as the statute states the arrested must merely be brought before a magistrate judge within a reasonable time. In *Heard v. State,* 701 S.W.2d 298 (Tex.App.—14th Dist.1985, writ ref.), the arrest of a fugitive on a warrant issued by the Alabama Board of Corrections for the violation of parole, absent a Texas warrant and formal extradition procedures, was held to be authorized by art. 51.13, § 14.

 No precedent can be found to support the position that the procedure employed by defendants was clearly contrary to law, nor have the parties provided any for the consideration of this motion. Consequently, plaintiff has not shown by a preponderance of the evidence that the arrest and transport was not without adequate legal justification. *See Avalos v. Mejia,* 788 S.W.2d 645, 646 (Tex.App.1990) (plaintiff bears burden of proving imprisonment was not under valid legal process); *Tandy Corp. v. McGregor,* 527 S.W.2d 246, 248 (Tex.Civ.App.—Texarkana 1975, writ. ref. n.r.e) (same).

1. Plaintiff argues that Louisiana would not consider the procedure followed by the defendants as "authorized by law" and submits a Louisiana Attorney General's opinion supporting the contention. *See* La.Atty' Gen.Op. 81–253 (1981). The opinion concludes that a non-Louisiana bail

bondsman may not transport a fugitive found in Louisiana without the surrender to Louisiana authorities for extradition. Because the relevant inquiry is whether Texas considers the facts at issue to be authorized, the court finds this argument unpersuasive.

It has not been shown that absence of extradition proceedings and arguably, the failure to bring plaintiff before a Texas magistrate, vitiated the authority of law for the arrest and gave rise to a cause of action for false imprisonment. Therefore, the motion to alter or amend must be denied.