Harold T. Walker City Attorney Ninth Floor — Municipal Office Building 701 North Seventh Street Kansas City, Kansas 66101
Dear Mr. Walker:
You request our opinion concerning the scope of authority of a bail bondsman when arresting a bonded principal in order to surrender him or her to the court.
You state that there have been occasions where agents of a Missouri bonding company have come to Kansas City, Kansas for the purpose of arresting their principal. A disturbance ensues and the agents are found to be in possession of firearms in violation of a municipal ordinance that prohibits the possession of a firearm. You question whether the city may prosecute bondsmen for criminal acts, such as possessing a weapon, which occur during an attempt to arrest their principal.
K.S.A. 22-2809 states, in relevant part, as follows:
 "Any person who is released on appearance bond may be arrested by his surety or any person authorized by such surety and delivered to a custodial officer of the court in any county in the state in which he is charged. . . ."
Until the middle of this century, courts had generously bestowed upon bail bondsmen carte blanche to use whatever force was necessary to acquire custody of the principal who had left the jurisdiction. 6 Fordham Urban Law Journal 333 (1978). The seminal case is Taylor v. Taintor, 83 U.S. 366, 21 L.Ed. 287
(1872) which sets out the bondsman's common law arrest powers:
 "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath, and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of due process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner." (Emphasis added).
This deferential approach has abated in the last thirty years because of the danger to third parties and the community at large when an arrest goes awry. Recognizing this potential, some courts have affirmed convictions for breaking into a third party's home and assaulting third parties during a bondsman's attempt to arrest a principal. State v. Tapia, 468 N.W.2d 342
(Minn.App. 1991); State v. Lopez, 734 P.2d 778 (N.M. 1986); Statev. Portnoy, 718 P.2d 805 (Wash.App. 1986); Bennett v. State,311 S.E.2d 513 (Ga.App. 1983).
However, other courts have reversed convictions based upon the bondsman's privilege to arrest. [Lopez v. McCotter, 875 F.2d 273
(10th Cir. 1989) (applying New Mexico law; habeas corpus granted with respect to convictions for attempted burglary and assault on a third party but denied for assault on a law enforcement officer); Commonwealth v. Wilkerson, 613 N.E.2d 914 (Mass. 1993) (conviction for kidnapping and assault with a deadly weapon reversed because trial court did not instruct on the bondsman's authority to remove the principal from the commonwealth). Some states have construed their extradition statutes to abrogate the bondsman's common law authority to arrest a principal and transport the latter out of the state by requiring the bondsman to appear before a court with the principal so that the principal is allowed to answer. Commonwealth v. Wilkerson, supra; Lopez v.McCarter, supra; State v. Lopez, supra; State v. Epps,588 P.2d 425 (Or. 1978).
Under Kansas law, a bondsman has both a statutory and common law right to arrest the principal. Bailey v. Kenney, 791 F. Supp. 1511
(D.Kan. 1992). However, a bondsman may only "use reasonable means" in apprehending the person which may or may not include breaking and entering the person's home, depending upon the circumstances. Bailey at 1527. [Bailey is a 42 U.S.C. § 1983
case involving a bondsman who broke into the home of the plaintiff whom the bondsman mistakenly thought was the principal. The court concluded that there was state action because of the bondsman's use of police officers to effect the arrest and that there were triable issues of fact concerning state law claims for assault and false imprisonment.]
While there are no Kansas appellate cases involving situations where the court has had to consider a bondsman's conviction for certain criminal acts arising out of the arrest of the principal, it is our opinion that the courts would use the Bailey rationale and allow a bondsman to use reasonable means to effect an arrest including breaking and entering into the person's home ifnecessary. However, we do not believe that a bondsman has any greater right than a law enforcement officer to effect an arrest. Furthermore, in our opinion the court would not condone criminal conduct by a bondsman perpetrated against third parties or their property in the bondsman's quest to secure custody of the principal.
As far as a bondsman possessing a firearm is concerned, we understand that a city ordinance prohibits the possession of a firearm unless an exception applies (eg. law enforcement officers, wardens, members of the armed services, licensed hunters etc.). There is no exception for a bondsman, so if the latter is found to be in possession of a firearm while he or she is attempting to secure custody of a principal, it is our opinion, based on the above analysis, that the bondsman may be charged pursuant to the ordinance even though the bondsman has a privilege of using reasonable means to effect the arrest.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm