United States Court of Appeals,

Fifth Circuit.

No. 94-41329.

Brian Anthony LANDRY, Plaintiff-Appellant,

v.

A-ABLE BONDING, INC., et al., Defendants,

A-Able Bonding, Inc., et al., Defendants-Appellees.

Feb. 15, 1996.

Appeal from the United States District Court for the Eastern District of Texas.

Before HIGGINBOTHAM, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Brian Anthony Landry appeals the district court's final judgment dismissing his civil rights claims, brought pursuant to 42 U.S.C. § 1983, and his state law claim for false imprisonment. We affirm in part, reverse in part, and remand to the district court with instructions.

I

The facts material to Landry's appeal are not in dispute. Landry was charged with felony theft in Lafayette, Louisiana. He entered a bail bond agreement with Defendants A-Able Bonding, Inc., et al. (collectively "A-Able"). In violation of the terms of the bail bond agreement, Landry left Louisiana without informing A-Able, and failed to appear on his court date. The Louisiana trial court issued an arrest warrant and entered judgment forfeiting the bond. Pursuant to Louisiana law, A-Able was given six months to surrender Landry to the court in order to avoid liability for the

bond.  After receiving information concerning Landry's whereabouts, Gerold Burrow, owner of A-Able Bonding, Inc., drove with two employees to the home of Norman Boudreaux in Port Arthur, Texas. When Landry appeared at the door, Burrow seized Landry, handcuffed him, and took him to the car.  Burrow then drove back to Lafayette, Louisiana, where he surrendered Landry to the sheriff at the Lafayette Parish Jail.  Landry filed suit against A-Able in federal district court, asserting § 1983 claims for deprivation of liberty and property without due process of law, and state law claims for false imprisonment and conversion.[1]  After trial by consent of the parties before a magistrate judge, the district court entered judgment for A-Able.  Landry filed a motion to alter or amend the judgment, which was denied.  Landry then filed a timely notice of appeal.

## II

### A

Landry first argues that the district court erred in dismissing his § 1983 civil rights claim.  In order to recover under § 1983, a plaintiff must prove (1) that he was deprived of a federally protected right, and (2) that the deprivation occurred under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).  In order to prove the deprivation of a right protected by the Due Process Clause of the Fourteenth Amendment, a plaintiff must prove state

---

[1]Landry does not appeal that part of the district court's judgment dismissing his state law claim for conversion.

2

action. *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995). In § 1983 actions alleging the deprivation of due process rights, the Fourteenth Amendment's "state action" requirement and § 1983's "under color of state law" requirement collapse into a single inquiry. *Id.* The district court's opinion concluded that Landry failed to prove that any defendant acted under color of state law. We review the district court's findings of fact for clear error. FED.R.CIV.P. 52(a). We review the district court's conclusions of law de novo. *Chandler v. City of Dallas,* 958 F.2d 85, 89 (5th Cir.1992).

A plaintiff may satisfy the "under color of state law" requirement of § 1983 by proving that the conduct causing the deprivation is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). "Fair attribution" requires (1) that the deprivation is caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly described as a state actor. *Id.* at 937, 102 S.Ct. at 2753–54.

Louisiana law allows bail bondsmen to arrest their principals for purposes of returning them to detention facility officers. LA.CODE CRIM.PROC.ANN. art. 340. Landry has therefore satisfied the first prong of the *Lugar* test, by alleging that his deprivation was caused by the exercise of a privilege created for bail bondsmen by the State of Louisiana. Thus, in order to decide whether Burrow

3

and his employees acted under color of state law, we must determine whether they may be fairly described as state actors. The Supreme Court has articulated a number of different standards for determining whether a party may be fairly described as a state actor.[2] However, the Supreme Court has also recognized that state action is necessarily a fact-bound inquiry which should consider the context in which state action is alleged. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2755.

The majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals.[3] However, the

---

[2]*See, e.g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (applying the "nexus" test, which asks whether the relationship between the party's actions and the state is such that the party's actions may be fairly treated as that of the state itself); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170-71, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) (applying the "state compulsion" test, which asks whether the state has exercised such coercive power or significant encouragement that the party's actions must be deemed to be that of the state); *Terry v. Adams,* 345 U.S. 461, 475-77, 73 S.Ct. 809, 816-17, 97 L.Ed. 1152 (1953) (applying the "public function" test, which asks whether the party exercised powers that are traditionally the exclusive prerogative of the state).

[3]*Compare Jackson v. Pantazes,* 810 F.2d 426, 429 (4th Cir.1987) (holding that bondsman was a state actor, where police officer assisted bondsman by gaining entrance to principal's residence, restraining an occupant of the residence, and serving warrants on an occupant of the residence); *Bailey v. Kenney,* 791 F.Supp. 1511, 1521-23 (D.Kan.1992) (holding that jury could find that bondsman was a state actor, where police officers assisted bondsman by forcing entrance to principal's residence, drawing their weapons when the principal appeared, and restraining the principal); *Maynard v. Kear,* 474 F.Supp. 794, 800-03 (N.D.Ohio 1979) (holding that bondsmen were state actors, where bondsmen possessed state bench warrant for arrest of principal, and purported to act pursuant to the authority of that warrant in dealing with local

4

Fourth Circuit has alternatively found the conduct of bail bondsmen generally to constitute state action, because of the interdependent relationship between bondsmen and the state's criminal court system.[4]  In the case now before us, Burrow possessed a Louisiana state court arrest warrant for Landry at the time that Landry was seized and driven back to Louisiana.  However, Burrow did not purport to act pursuant to the warrant in any respect.  Burrow did not attempt to enlist the assistance of local law enforcement officials, and he did not display the warrant to Landry or anyone else.  Burrow and his two employees unilaterally seized Landry in Texas and returned him to Louisiana.  On these facts, we hold that the mere possession of an arrest warrant does not render a bail bondsman a state actor under § 1983, where he neither purports to act pursuant to the warrant, nor enlists the assistance of law enforcement officials in executing the warrant.[5]  Therefore, we

---

police officers) *with Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550-55 (9th Cir.1974) (holding that Nevada bondsmen were not state actors, where the bondsmen unilaterally seized principal in California and returned principal to Nevada), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975); *Easley v. Blossom,* 394 F.Supp. 343, 345 (S.D.Fla.1975) (holding that bondsmen were not state actors, where bondsmen allegedly used threat of withdrawing bond to extort property from principal); *Curtis v. Peerless Ins. Co.,* 299 F.Supp. 429, 434-35 (D.Minn.1969) (holding that appointed agents of Tennessee bonding company were not state actors, where such agents unilaterally seized principal in Minnesota and returned principal to Tennessee).

[4]*See, e.g., Jackson,* 810 F.2d at 430 (finding that bondsman was state actor because bail bondsmen rely on state licensing for livelihood, while state relies on bondsmen to facilitate the pretrial release of accused persons, monitor their whereabouts, and retrieve them for trial).

[5]We are not persuaded by the Fourth Circuit's finding that the relationship between bail bondsmen and the state criminal court

find that Burrow and his two employees did not act under color of state law when they seized Landry in Texas and returned him to Louisiana.[6]  Consequently, the district court did not err in dismissing Landry's § 1983 claims for failure to prove that any defendant acted under color of state law.

B

Landry next argues that the district court erred in dismissing his state law false imprisonment claim.  To recover for false imprisonment under Texas law,[7] a plaintiff must prove willful detention, lack of consent, and absence of authority of law.  *James*

system is such that the actions of the bondsmen may be fairly treated as that of the state itself.  *See supra* note 4.  The Ninth Circuit refused to adopt a similar rationale in *Ouzts.*  We agree with the *Ouzts* court's statement, rejecting the argument that bail bondsmen act as unofficial agents of the courts:  "[T]he bail bondsman is in the business in order to make money and is not acting out of a high-minded sense of devotion to the administration of justice."  505 F.2d at 554-55.

[6]We note that our finding that Burrow and his two employees were not state actors means that Landry has failed to prove a violation of his Fourteenth Amendment due process rights, and thus that Landry has failed to allege the deprivation of a federally protected right.

[7]In its Memorandum Concerning Plaintiff's Motion to Alter or Amend Judgment, the district court found that Texas law governed Landry's false imprisonment claim.  *Landry v. A-Able Bonding Inc.,* 870 F.Supp. 715, 718-19 (E.D.Tex.1994).  We review a district court's choice-of-laws determination de novo.  *Duhon v. Union Pacific Resources Co.,* 43 F.3d 1011, 1013 (5th Cir.1995).  Federal courts apply the choice-of-laws rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941).  Texas choice-of-laws rules apply the substantive law of the state with the most significant relationship to the facts and circumstances surrounding the litigation.  *Brown v. Cities Serv. Oil Co.,* 733 F.2d 1156, 1159 (5th Cir.1984).  Having carefully reviewed the record, we conclude that the district court correctly decided that Texas has the most significant relationship to the facts and circumstances relevant to Landry's false imprisonment claim.

*v. Brown,* 637 S.W.2d 914, 918 (Tex.1982). In its Memorandum Concerning Plaintiff's Motion to Alter or Amend Judgment, the district court found that Burrow and his employees willfully detained Landry without his consent. *Landry v. A-Able Bonding Inc.,* 870 F.Supp. 715, 720 (E.D.Tex.1994). However, the district court also found that Landry failed to show an absence of legal authority for his arrest and detention. *Id.* at 721-22. A person has legal authority for detaining another where the detention is executed by virtue of legally sufficient process issued by a court of competent jurisdiction. *Pete v. Metcalfe,* 8 F.3d 214, 218-19 (5th Cir.1993). In this case, where none of the material facts are in dispute, the question of whether the authority for Landry's detention was legally sufficient is a question of law.

Texas has adopted the Uniform Criminal Extradition Act to govern the extradition of "fugitives from justice." TEX.CODE CRIM.PROC.ANN. art. 51.13. Texas law defines "fugitive from justice" as a person who is charged with a crime in one state, leaves that state, is sought in connection with that charge, and is found in another state. *Ex Parte Robertson,* 151 Tex.Crim. 635, 210 S.W.2d 593, 594 (1948). Landry was charged with theft in Louisiana and released on bond. He then left Louisiana, moved to Texas, and failed to appear for his court date. A warrant was subsequently issued for his arrest. Landry was thus a "fugitive from justice," as defined by Texas law.

The Texas Uniform Extradition Act provides that a private person may execute a lawful arrest without a warrant "upon

7

reasonable information that the accused stands charged in the courts of a State with a crime punishable by death or imprisonment for a term exceeding one year."  TEX.CODE CRIM.PROC.ANN. art. 51.13 § 14.  We have previously held this provision to make lawful the arrest of a California fugitive in Texas by secret service agents who had knowledge of a California warrant for his arrest. *U.S. v. Johnson,* 815 F.2d 309, 313-14 (5th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).  Section 14 has also been held to make lawful the arrest of an Alabama fugitive in Texas by Texas authorities acting on an Alabama warrant. *Heard v. State,* 701 S.W.2d 298, 302 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd).  When they arrested Landry, Burrow and his employees were private citizens acting upon a Louisiana arrest warrant.  That warrant provided Burrow with reasonable information that Landry had been charged in Louisiana with a crime punishable by imprisonment for a term of more than one year.[8]  Thus, Landry's arrest was authorized by Texas law.

Liability for false imprisonment is not foreclosed by a

---

[8]Possession of a valid Louisiana arrest warrant is insufficient, in and of itself, to render an arrest in Texas lawful.  Texas law requires, among other things, that a lawful arrest warrant issue in the name of "The State of Texas." TEX.CODE CRIM.PROC.ANN. art. 15.02.  However, for purposes of determining the legality of an arrest under provisions allowing arrests without a warrant, courts do consider the possession of a foreign warrant as evidence that the possessor had reasonable cause to believe the person named in the warrant committed a crime.  *See, e.g., Stallings v. Splain,* 253 U.S. 339, 341-42, 40 S.Ct. 537, 538, 64 L.Ed. 940 (1920) ("If the bench warrant issued in Wyoming was not effective as a warrant within the District of Columbia, ... [i]t would, at least, serve as evidence that Splain had reasonable cause to believe that a felony had been committed by Stallings.").

lawfully executed initial arrest, for false imprisonment may result from an unlawful detention following a lawful arrest. *See Gladden v. Roach,* 864 F.2d 1196, 1201 (5th Cir.) (finding that no defense of lawful authority to false imprisonment claim was available to officers who unlawfully detained the plaintiff after a lawful arrest), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). The Texas Uniform Criminal Extradition Act provides that, following a lawful arrest under § 14, "the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him *under oath* setting forth the ground for the arrest *as in the preceding section.*" TEX.CODE CRIM.PROC.ANN. art. 51.13 § 14 (emphasis added). The preceding section, § 13, governs warrants issued upon "*the oath* of any credible person *before any judge or magistrate of this State.*" *Id.* § 13 (emphasis added).

After arresting Landry, Burrow immediately transported him back to Lafayette, Louisiana, and surrendered him to authorities there.[9] Thus, it could be argued that Landry was taken before a magistrate or judge "with all practicable speed," albeit a magistrate or judge in Louisiana. However, Texas law, by providing that an oath be sworn before a judge or magistrate of "this State," plainly required that Landry be taken before a magistrate or judge in Texas. Therefore, Burrow and his employees acted contrary to Texas law, and thus acted unlawfully, when they failed to present

---

[9]In its opinion, the district court took judicial notice of the fact that the drive from Port Arthur, Texas, to Lafayette, Louisiana, takes about two and one-half hours.

Landry before a judge or magistrate in Texas after his arrest, and instead unilaterally transported Landry back to Louisiana.[10] Accordingly, we hold that the district court erred in concluding that Landry did not establish an absence of legal authority for his detention during his transport from Texas to Louisiana. Because the district court also found that Landry was willfully detained without his consent, Landry has proven the elements of a claim for false imprisonment.

We must now address the issue of damages. Landry argues that he is entitled to damages for the fear and emotional distress caused by his arrest and detention during the two and one-half hour drive from Texas to Louisiana. In its opinion, the district court found that Landry suffered no actual damages. We review this factual finding for clear error. FED.R.CIV.P. 52(a). After a careful review of the record, we conclude that this finding is not clearly erroneous. However, under Texas law, nominal damages are available to plaintiffs who prove false imprisonment. *Whirl v.*

---

[10]Contractual waivers of formal extradition proceedings have been held enforceable by Texas courts. *See, e.g., Ex parte Johnson,* 610 S.W.2d 757, 759-60 (Tex.Crim.App.1980) (holding that "formal extradition proceedings are not necessary to the return of absconding parolees or probationers who have signed a prior waiver of extradition as a condition to their release"). A-Able points to two contractual provisions as evidence that Landry consented to being returned to Louisiana in the event of Landry's default. The bonding agreement provides that "I am fully aware that if I do not live up to any part of this agreement, A-Able Bonding Co. has the right to pull my bond and return me to jail." The application for the appearance bond provides that A-Able "shall have the right to apprehend, arrest, and surrender the principal to the proper officials at any time as provided by law." We find that neither of these provisions constitutes a waiver of extradition proceedings otherwise "provided by law" under the Texas Uniform Criminal Extradition Act.

*Kern,* 407 F.2d 781, 798 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

### III

Accordingly, we AFFIRM the district court's dismissal of Landry's § 1983 civil rights claims. We REVERSE the district court's dismissal of Landry's state law claim for false imprisonment, and we REMAND to the district court for the imposition of nominal damages.