## Bowlin, et al. v. Archer.

(Decided February 20, 1914.)

### Appeal from Whitley Circuit Court.

1. Arrest—Pursuit of One Charged With Felony by Peace Officer.— A peace officer may pursue and apprehend in another jurisdiction in the same State, one charged with a felony; but, even though armed with a warrant, he has no right to pursue and apprehend beyond the jurisdiction of the officer issuing the warrant, one charged with a misdemeanor only.

2. Arrest—When Prisoner Not Released.—Where an officer arrested a person in Kentucky, and the prisoner forcibly dragged the officer across the State line into Tennessee, the prisoner was not thereby released; he having been legally arrested in Kentucky and never released by the arresting officer.

3. Instructions.—It is an elementary rule of practice that instructions to the jury should be confined to the issues presented by the pleadings and the evidence.

4. Instructions—Naked Legal Proposition.—It is improper to give an instruction announcing a naked legal proposition, however correct it may be, unless it bears upon and is connected with the issues involved; and, unless, further, there has been received some competent evidence to which the jury may apply it.

5. Instructions—Action Against Officer for Conspiracy to Bring About Killing of Prisoner.—Where an arresting officer was sued for conspiracy to bring about the killing of his prisoner, the petition relying solely upon the alleged conspiracy, it was error for the trial court to instruct the jury to find for the plaintiff, if they believed from the evidence that the officer had failed to protect his prisoner from assault.

H. L. BRYANT, R. S. ROSE, STEPHENS & STEELY and K. D. PERKINS for appellants.

P. W. HARDIN, R. L. POPE and H. B. BROWN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Thomas Bowlin was the Marshal of the town of Jellico, Kentucky, which adjoins the boundary line between Kentucky and Tennessee. Jellico, Ky., and Jellico, Tenn., are thus separated only by a line, and are, in fact, one town, although two, geographically.

On August 20, 1911, while Bowlin was attempting to arrest one Lewis Archer on a *capias pro fine,* Archer resisted arrest and dragged Bowlin across the Tennessee line and about twenty feet into the State of Tennessee. One of the witnesses tells what happened after the arrest, as follows:

"Archer was so much stouter than Tom he just pulled him on across the road, and in pulling across Archer says, 'Tom, you must not do that, I am in Tennessee.' Tom says, 'Arrested you in Kentucky. I can follow you as long as I have got sight of you.' "

While Thomas Bowlin and Archer were scuffling, James Bowlin, a brother of Thomas Bowlin, came up and, after striking Archer on the head with his pistol, shot and killed him.

This action was brought by Mrs. Lewis Archer, the widow of the decedent, against Thomas Bowlin and G. P. Rose, W. H. Haun and Perry Bryant, sureties on his bond, and James Bowlin, to recover damages for her husband's death. The petition charged a conspiracy between James Bowlin and Thomas Bowlin to kill Archer, and that in pursuance of that conspiracy they did kill him in Kentucky. It is further alleged that at the time of the killing, the two Bowlins were attempting to make a false and wrongful arrest of Archer. The answer is a traverse of the petition.

It appears that prior to the homicide Thomas Bowlin had been elected Marshal of the town of Jellico, Ky., and had executed bond to the Commonwealth of Kentucky and the town of Jellico, with G. P. Rose, W. H. Haun and Perry Bryant as sureties, conditioned for the faithful performance of his duties as Marshal. Bond Stewart conducts a restaurant in the town of Jellico, Ky., near the Tennessee line. Lewis Archer was there. Thomas Bowlin, having a *capias,* went to Stewart's restaurant for the purpose of arresting Archer, who had been drinking. Archer was at the back door of Stewart's restaurant when Thomas Bowlin arrived. When Bowlin attempted to arrest Archer, Archer, who was the larger

and stronger man, dragged Bowlin over the Tennessee line and into that State some fifteen or twenty feet. During the scuffle, their hats dropped off. Thomas Bowlin picked up Archer's hat and handed it to him. At the same time he placed his hand on Archer's arm. At this time James Bowlin ran up, and after striking Archer with his pistol, shot and killed him. When this occurred Thomas Bowlin's pistol was in his overcoat pocket. After Archer was shot, Thomas and James Bowlin carried him back into the State of Kentucky.

A witness for the plaintiff named David Goins, who was impeached, testified that he was present when Lewis Archer was killed, and that just before the trouble began he saw James Bowlin cross from Kentucky into Tennesee; that when James Bowlin came down the street Thomas Bowlin was in a position to see him; that when he first saw the Bowlins they were in front of Bond Stewart's restaurant, and that Thomas Bowlin motioned to James to come back into the alley. Goin said he never heard what they said, but only saw them "plotting." There was no other evidence tending to show a conspiracy.

According to the evidence for the defendants, Thomas Bowlin never had any arrangement with his brother, James Bowlin, to help him arrest Archer, or to do Archer any harm; he did not know his brother was in the vicinity until he saw him coming; he had his own pistol, and if he had desired to injure Archer he could have done so. There was also evidence tending to show that James Bowlin did not come from the direction indicated by Goins, and that if he had come from that direction Goins' position was such that he could not have seen him.

The jury returned a verdict in favor of plaintiff for $1,250.00; and judgment having been entered accordingly, Thomas Bowlin and his sureties appeal.

1. As the proof shows beyond a doubt that Archer was killed in Tennessee, appellants insist the jury should have been peremptorily instructed to find for the defendants, as requested. This claim rests upon the theory that Thomas Bowlin's authority to arrest Archer, vanished the moment he passed over the State line into Tennessee, and that his subsequent acts in Tennessee in connection with the homicide being without authority

and not done under color of his office, the sureties on his bond are not liable therefor. ·

Appellants rely upon the well-known general rule which limits the power of the arresting officer in misdemeanor cases to act within his jurisdiction, which is laid down in 3 Cyc., 890, as follows:

"A peace officer may pursue and apprehend in another jurisdiction in the same State one charged with felony; but, even though armed with a warrant, has no right to pursue and apprehend, beyond the jurisdiction of the officer issuing the warrant, one charged with a misdemeanor merely."

This rule has been recognized in this State. York v. Commonwealth, 82 Ky., 360; Cardwell v. Commonwealth, 20 Ky. L. R., 496, 46 S. W., 705. It must be conceded the rule applies with even greater force between different sovereignties, where the officer of one sovereignty can exercise no authority whatever in the other.

But the facts of this case do not bring it within the general rule above announced, since Archer was arrested in Kentucky and not in Tennessee. The arrest having been legally made in Kentucky, Archer could not defeat the arrest by forcibly carrying the arresting officer out of his baliwick. He was still under arrest. The entire proceeding was one act. If Bowlin had succeeded in bringing Archer back into Kentucky, could it be said that Bowlin had made an illegal arrest in Tennessee? We think not. But if Bowlin had no right to hold Archer in custody while they were in Tennessee, his act in bringing him back into Kentucky would have been unauthorized.

Appellants rely upon Commonwealth v. Ball, 126 Ky., 544. In that case Cottrell received a mortal wound in Kentucky, and was then carried to Tennessee where he died. It was held that the Kentucky court had jurisdiction to try the offender, and that the going of Cottrell into Tennessee, being his own voluntary act, and not the act of the defendant, could not affect the case. That decision does not support appellant's view; on the contrary, it would seem to sustain the other view, that Archer having been arrested in Kentucky, his forcibly carrying Bowlin into Tennessee, could not affect the case. Archer was lawfully arrested; and as Bowlin never released him, he continued in legal custody after Bowlin had been forcibly carried into Tennessee. And, being in the law-

ful custody of Bowlin, Archer was entitled to the protection due a prisoner.

2.   The instructions given to the jury, in so far as they are material to the questions raised upon the appeal, read as follows:

"1.   It was the duty of the defendant, Thomas Bowlin, as Marshal of the city of Jellico, Kentucky, when a *capias pro fine* for the deceased, Lewis Archer, was placed in his hands, to use reasonable diligence to apprehend and arrest the said Archer upon said *capias,* using no more force than was reasonably necessary to accomplish said arrest; and

"It was the duty of the defendant, Thomas Bowlin, as Marshal of the city of Jellico, Kentucky, after he had arrested the deceased, Archer, if he did arrest him, to exercise ordinary care and diligence to shield and protect the said Archer against assault from all persons whomsoever while in his custody as a prisoner; and

"It was the duty of the deceased, Lewis Archer, to peaceably submit to arrest by the said Bowlin under said *capias.*

"2A.   If you believe from the evidence that the defendants, Thomas Bowlin and James Bowlin, entered into an agreement, arrangement or understanding between themselves whereby Thomas Bowlin, as Marshal of the town of Jellico, Kentucky, was to arrest or attempt to arrest the deceased, Lewis Archer, and while the said Archer was under arrest, or while the defendant, Thomas Bowlin, was attempting to arrest the said Archer the defendant, James Bowlin, was to assault, strike, shoot or otherwise injure the deceased Archer, and in pursuance of and in obedience to said understanding, arrangement or agreement the defendant, Thomas Bowlin, did attempt to arrest the deceased Archer, and while he was thus engaged, the defendant, James Bowlin, did assault, strike and shoot the deceased Archer, from which the said Archer shortly thereafter died, which said assaulting, striking and shooting by the said James Bowlin was unnecessary and was not believed by the defendants, Thomas Bowlin and James Bowlin, or either of them, in the exercise of a reasonable judgment to be necessary in order to protect themselves, or either of them, from death or the infliction of some great bodily harm at the hands of the deceased Archer, then the law

is for the plaintiff, Mrs. Lewis Archer, and you will so find, or

"B. If you believe from the evidence that the defendant, Thomas Bowlin, while he had the deceased Archer under arrest and holding him as prisoner, if he did have him under arrest, willfully, corruptly and wickedly allowed or permitted the defendant, James Bowlin, to assault, strike or shoot the deceased Archer so that he shortly thereafter died, and which said assaulting, striking and shooting by the defendant, James Bowlin, was unnecessary and was not believed by the defendants, James Bowlin and Thomas Bowlin, or either of them, in the exercise of a reasonable judgment to be necessary to so assault, strike or shoot the deceased Archer in order to protect themselves, or either of them, from the infliction of some great bodily harm at the hands of the said Archer, then the law is for the plaintiff, Mrs. Lewis Archer, and you will so find."

The other instructions further defining the respective rights and duties of an arresting officer and a prisoner, are omitted as immaterial to this appeal, under the finding of the jury, which was as follows:

"We, the jury, agree to find for the plaintiff in the sum of $1,250.00 under instruction No. 2B.

"W. E. BUNCH, Foreman."

It will be noticed that instruction 2A submits to the jury the issue of the conspiracy upon the part of Thomas Bowlin and James Bowlin to kill Archer; while instruction 2B, under which the verdict was found, instructed the jury to find for the plaintiff if Thomas Bowlin failed to protect Archer while under arrest. The petition, however, rests appellee's cause of action solely upon the ground of conspiracy between the Bowlins; it contains no allegation or suggestion that Thomas Bowlin failed in any way, to protect Archer while under arrest.

It is an elementary rule of practice that instructions should be confined to the issues presented by the pleadings and the evidence. Moreover, they must agree; and proof without a pleading to support it no more warrants a recovery, than a pleading without proof.

It is improper to give an instruction announcing a naked legal proposition, however correct it may be, unless it bears upon and is connected with the issues involved; and, unless further, there has been received

some competent evidence to which the jury may apply it.'' 38 Cyc., 1612.

In Blue Wing v. Buckner, 12 B. M., 249, it was said: ''Instructions containing abstract propositions of law, though conceded to be correct, should not be asked, and if asked, may be properly refused. If they are not applicable to, or based upon, the facts of the case as shown by the proof, they can have no other tendency than to confuse and misdirect the minds of the jury.''

, To the same effect see Hutchison v. Maysville, 30 Ky. L. R., 1173, 100 S. W., 331; B. & O. R. R. Co. v. Sheridan, 31 Ky. L. R., 111, 101 S. W., 928; Bauer Cooperage Co. v. Shelton, 114 S. W., 247; C. & O. Ry. Co. v. Vaughn, 115 S W., 217; Mathis v. Bank of Taylorsville, 136 Ky., 634; Sovereign Camp Woodmen of the World v. O'Neal, 141 Ky., 263; Mosby v. Larue, 143 Ky., 433.

The reason for the rule is, that the defendant is only called upon to defend his alleged unlawful acts shown by the pleadings; he is to try that case, not a different one.

In giving instruction 2B, therefore, which was not justified under the pleadings, the trial court erred to the prejudice of the appellants.

3. Furthermore, under the rule that the instructions should also be confined to the issues supported by evidence, and that where there is no evidence upon an issue raised by the pleadings that issue should not be submitted to the jury, the trial court erred in giving instruction 2A, by which it submitted to the jury the issue of conspiracy upon the part of the appellants. The only testimony offered in support of this claim of the appellee, was the testimony of Goins, to the effect that shortly before the trouble began, he saw James Bowlin and Thomas Bowlin ''plotting.'' He did not hear what they said; he only saw Thomas Bowlin motion to James Bowlin to go into the alley near the restaurant. This testimony did not rise to the dignity of proof of a conspiracy to kill Archer. There being, therefore, no evidence upon the subject of the alleged conspiracy, and that being the only ground upon which the petition sought a recovery, the trial court should have peremptorily instructed the jury to find for the defendant.

There are other minor questions raised by the briefs which we do not consider it necessary to now decide. Among these is the alleged misconduct of counsel for the

plaintiff, which probably will not be repeated upon another trial.

Judgment reversed, and action remanded for a new trial.