**Kevin WALKER, Appellant/Cross–Appellee**

v.

**COMMONWEALTH of Kentucky, Appellee/Cross–Appellant.**

Nos. 2001–SC–0396–DG, 2002–SC–0498–DG.

Supreme Court of Kentucky.

Feb. 19, 2004.

Edwin W. Tranter, Tranter & Meier, Fort Thomas, Counsel for Appellant/Cross–Appellee Kevin Walker.

Gregory D. Stumbo, Attorney General, Brian T. Judy, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee/Cross–Appellant Commonwealth of Kentucky.

COOPER, Justice.

Appellant Kevin Walker appeals from his conviction of violating KRS 440.270(2), a Class D felony, referred to by the parties herein as the offense of "bondsman detaining without warrant." KRS 440.270 is a part of the Uniform Criminal Extradition Act (UCEA), KRS 440.150—.420, and provides as follows:

(1) *Whenever any person within this state shall be charged on the oath of any credible person before any judge of this state with* the commission of any crime in any other state and, except in cases arising under KRS 440.210, with having fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or *having broken the terms of his bail,* probation or parole, *or whenever complaint shall have been made before any judge in this state setting forth on the affidavit of any credible person in another state that* a crime has been committed in such other state and that *the accused has* been charged in such state with the commission of the crime, and, except in cases arising under KRS 440.210, has fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having *broken the terms of his bail,* probation or parole and is believed to be in this state, *the judge shall issue a warrant directed to any peace officer* commanding him to apprehend the person named therein, wherever he may be found in this state, and to bring him before the Circuit or District Judge of the county in which he was arrested who may be available in or convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit, and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant.

(2) *No bail bondsman or his agent shall arrest, detain, imprison, or remove from the state any person for having broken the terms of his bail unless a warrant for that person's arrest has been issued as provided for in subsection (1) of this section.*

(3) Any violation of subsection (2) of this section shall be deemed as a Class D felony and punishable thereas.

(Emphasis added.) Subsection (1) was enacted along with the other provisions of the UCEA in 1960. 1960 Ky. Acts, ch. 135, § 14. Subsections (2) and (3) were added by the 1976 General Assembly, 1976 Ky. Acts, ch. 95, § 1, concomitantly with the enactment of the so-called "Bail Bonding Act of 1976" which abolished the practice of commercial bail bonding in Kentucky and replaced it with the present system of pretrial release. KRS 431.510–.550.[1]

Appellant owns a bail bonding company in Ohio. He also contracts himself out to other bail bonding companies as a "fugitive recovery agent" who apprehends and returns to custody bailed persons who have failed to appear in court and thereby jeopardized their bonds. On April 12, 1997, Allen Wayne Barkley was being held in jail in Cincinnati, Hamilton County, Ohio, on a misdemeanor charge of operating a motor vehicle on a suspended license, a misdemeanor charge of domestic violence, and a minor traffic offense. Ray Trimble, owner of Trimble Bail Bonding, an agent of Allegheny Mutual Casualty Company, posted a $21,000.00 bail bond to secure Barkley's release. On June 2, 1997, Barkley failed to appear as required in the Hamilton County Municipal Court. The judge ordered his bond forfeited and issued a capias to the police chief of Cincinnati to ap-

prehend Barkley and bring him to court. The capias listed a Cincinnati, Ohio, address for Barkley. He was not found at that address.

Before a bond can be finally forfeited in Ohio, the bailed person and the bondsman must be given the opportunity to "show cause" why the bond should not be forfeited. Ohio Rev.Code Ann. § 2937.36(C) (1960). "Good cause" can be shown "by production of the body of the accused." *Id.* On July 3, 1997, the court clerk notified Trimble in writing that Barkley's bond would remain forfeited "[u]nless the accused surrenders or some other mitigating circumstances are brought to the attention of the Court." Trimble hired Appellant to apprehend Barkley and return him to court. Appellant subsequently learned that Barkley was residing in an apartment in Newport, Campbell County, Kentucky.

On November 17, 1997, Appellant and two other "fugitive recovery agents" hired by Trimble were surveilling Barkley's residence when a man arrived in what was believed to be Barkley's pickup truck. When the man exited the truck and began walking toward the apartment, Appellant and his companions gave chase, ultimately forcing their way into the residence brandishing firearms and a stun gun. Although the man they had chased was not Barkley, they did find Barkley, along with his ex-wife and her three children, inside the residence. Appellant informed Barkley that he was "under arrest" and that he intended to return him to Ohio. Appellant and his companions then proceeded to handcuff and shackle Barkley and drag him outside to their vehicle against his forcible resistance. Meanwhile, someone called the Newport police, who arrived just

---

1. The constitutionality of KRS 431.510 was upheld in *Stephens v. Bonding Ass'n of Kentucky,* Ky., 538 S.W.2d 580 (1976), and *Ben-* *boe v. Carroll,* 494 F.Supp. 462 (W.D.Ky. 1977).

as Appellant was preparing to depart with Barkley for Ohio. When Appellant was unable to produce an arrest warrant, the police freed Barkley and released him.

Appellant was subsequently indicted by a Campbell County grand jury on charges of kidnapping, burglary in the first degree, assault in the fourth degree, wanton endangerment in the second degree, and "bondsman detaining without warrant." He was convicted of the assault and wanton endangerment charges, for which he was sentenced to a combined fine of $450.00. These misdemeanor convictions have not been contested on appeal. He was also convicted of "bondsman detaining without warrant" for which he was sentenced to one year in prison and a fine of $1,000.00. His motion for probation of the prison sentence was denied. The Court of Appeals affirmed the felony conviction but remanded for resentencing, perceiving that the trial judge did not give due consideration to probating the sentence. KRS 533.010(2). We granted discretionary review and the Commonwealth cross-appealed from the Court of Appeals' remand for resentencing.

## I. CONSTITUTIONAL ISSUES.

We first address Appellant's claims that KRS 440.270(2) violates his rights under various provisions of the United States Constitution, *viz:* (1) the Full Faith and Credit Clause of Article IV, Section 1, by denying full faith and credit to the laws and judicial proceedings of Ohio; (2) the Commerce Clause of Article II, Section 8, by unreasonably regulating his engagement in interstate commerce; (3) the Equal Protection Clause of the Fourteenth Amendment, by denying him the same rights of arrest afforded to other private citizens; and (4) the Due Process Clauses of the Fifth and Fourteenth Amendments by (a) retroactively applying a new statuto-

ry interpretation to criminalize his previously legal conduct, and (b) depriving him of his property right against bond forfeiture without due process of law.

### 1. Full Faith and Credit.

 Appellant argues that Kentucky must give full faith and credit to Ohio law with respect to the warrantless apprehension of fugitives from Ohio who flee to Kentucky. He is mistaken. "No state is required to adopt the statutes of another state which are in conflict with their [sic] own in the absence of a statute of that forum requiring them [sic] to do so." *Pyles v. Russell,* Ky., 36 S.W.3d 365, 367 (2000). *See also Hawkins v. State,* 745 S.W.2d 511, 513–14 (Tex.Ct.App.1988) (Texas courts not required to subjugate state's legitimate public policy expressed in statute criminalizing carrying of handguns by giving full faith and credit to California law authorizing bail bondsman with private investigator's license to carry handgun). KRS 440.270(2) does not interfere with Ohio's interest in obtaining the return of fugitives from bail to its jurisdiction. It only requires that the return be accomplished by the procedures set forth in KRS 440.270(1).

 Nor have we failed to give full faith and credit to the orders of the Hamilton County Municipal Court. Those orders did not purport to authorize Appellant to violate the law of Kentucky. But even if it were otherwise, "[t]he Full Faith and Credit Clause was designed to give the United States certain benefits of a unified nation, but a judgment of a sister state need not be recognized by another state if it is an improper infringement on the interests of the latter state." *Brengle v. Hurst,* Ky., 408 S.W.2d 418, 420 (1966).

### 2. Interstate Commerce.

 KRS 440.270(2) does not preclude bail bondsmen from obtaining the

apprehension of fugitives from bail. It only requires them to follow the procedures set forth in KRS 440.270(1).

Evenhanded local regulation to effectuate a legitimate local public interest is valid unless pre-empted by federal action or unduly burdensome on maritime activities or interstate commerce....

In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when conferring upon Congress the regulation of commerce, never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country.

*Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443–44, 80 S.Ct. 813, 815–16, 4 L.Ed.2d 852 (1960) (quotations and citations omitted). Thus, in *Louisville & N.R. Co. v. Kentucky*, 183 U.S. 503, 22 S.Ct. 95, 46 L.Ed. 298 (1902), it was held that any interference resulting from the enforcement of a state law forbidding railroads from charging more per ton for hauling freight over shorter distances rather than longer distances was too remote and indirect to be an unconstitutional interference with interstate commerce. *Id.* at 518–19, 22 S.Ct. at 101–02. Likewise, we conclude that a statute requiring that alleged fugitives from bail be afforded at least a minimum of due process only remotely and indirectly regulates the interstate business of bail bonding, thus is not unconstitutional.

### 3. Equal Protection.

Appellant asserts that KRS 440.270(2) denies him equal protection under the law because KRS 440.280 permits a private person to arrest a fugitive from bail whereas KRS 440.270(2) precludes a bondsman from doing so. In fact, KRS 440.280 would not have authorized a private person to arrest Barkley because the statute only permits a warrantless arrest of a person charged with a felony offense. Barkley was charged only with misdemeanors.

Nevertheless, a state may discriminate against a class, other than a suspect class, if there is a rational basis for doing so, *i.e.*, "if there is any reasonably conceivable state of facts supporting the perceived discrimination." *Steven Lee Enters. v. Varney*, Ky., 36 S.W.3d 391, 395 (2000) (quotations omitted).

[A] state may classify with reference to the evil to be prevented, and ... if the class discriminated against is or reasonably might be considered to define those from ·whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience.... The state may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.

*Associated Indus. of Ky. v. Commonwealth*, Ky., 912 S.W.2d 947, 956 (1995) (quoting *Campbell v. Commonwealth*, 229 Ky. 264, 17 S.W.2d 227, 229–30 (1929) (citations and quotations omitted)).

The evil sought to be prevented by the enactment of KRS 440.270(2) is included in the evils sought to be eliminated by the abolition of commercial bail bonding, *i.e.*, "vigilante"-style apprehensions of alleged fugitives from bail by bondsmen or their agents. (Appellant testified at trial that he had made more than fifty such apprehensions in Kentucky during his career as a "fugitive recovery agent.") The warrantless arrest of such persons by other private citizens is so unlikely as not to require this protec-

tion. Thus, there was a rational basis for the discrimination.

*4. Due Process Clause.*

■ Appellant's first due process claim is that he did not have "fair warning" of the criminality of his conduct because no Kentucky statute has previously been construed as changing the common law authority of a bail bondsman as enunciated in *Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1872), *viz:*

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern it is said: "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge."

*Id.* at 371–72 (footnotes omitted).

■ Appellant's claim grossly misconstrues the "fair warning" requirement. A "fair warning" violation occurs "[w]hen a[n] ... unforeseeable state-court [sic] construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect [being] to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Bouie v. City of Columbia*, 378 U.S. 347,

354–55, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964). In *Bouie*, the South Carolina Supreme Court interpreted a trespass statute that prohibited "*[e]ntry* on lands of another after notice prohibiting same" to prohibit the act of *remaining* on the premises of another after receiving notice to leave. *Id.* at 349–350, 84 S.Ct. at 1700–01 (emphasis added). *See also Gall v. Parker*, 231 F.3d 265, 305–06 (6th Cir.2000) (detrimental application of new judicial interpretation of extreme emotional disturbance defense to conduct occurring when more favorable interpretation was in effect violated "fair warning" requirement). The "fair warning" requirement also applies to changes in common law principles that are " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Rogers v. Tennessee*, 532 U.S. 451, 460–62, 121 S.Ct. 1693, 1699–1700, 149 L.Ed.2d 697 (2001) (state court's abolishment of common law "year and a day" rule did not violate "fair warning" requirement) (quoting *Bouie, supra*, at 354, 84 S.Ct. at 1697). However, we are not abolishing the common law rule enunciated in *Taylor, supra.* That occurred when KRS 440.270(2) was enacted. Nor are we changing an interpretation of KRS 440.270(2), for no court in this Commonwealth has previously construed it. We are simply applying its clear and unambiguous language to conduct that occurred twenty-one years after its enactment.

Appellant's reliance on *Lopez v. McCotter*, 875 F.2d 273 (10th Cir.1989), and *Commonwealth v. Wilkinson*, 415 Mass. 402, 613 N.E.2d 914 (1993), is misplaced. Both of those cases were interpreting statutory equivalents of KRS 440.270(1), *i.e.*, N.M. Stat. Ann. § 31–4–1 (1937), and Mass. Gen. Laws ch. 276, § 20A (1937); however, neither statutory scheme contained a statute similar to KRS 440.270(2). *Lopez* noted that no court had previously held that the language of the original UCEA abolished a

bail bondsman's common law right to make a warrantless apprehension of a fugitive from bail and that the language of the UCEA was too indefinite to put a bondsman on notice of an abrogation of the common law; thus, the state court's interpretation of the UCEA could not be applied retroactively to that bondsman's conduct. *Id.* at 277–78. *Wilkinson* held that while the UCEA could reasonably be interpreted as abrogating a bail bondsman's common law right to make a warrantless apprehension of a fugitive from bail, a Massachusetts court had never before given the statute that interpretation; thus, retroactive application of the interpretation was precluded. *Id.* at 917. *Lopez* and *Wilkinson* have no application to the interpretation of a statute that specifically and unambiguously abrogates a bail bondsman's common law right to effect a warrantless apprehension of a fugitive from bail by designating such conduct as a criminal offense. *See Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 552–53 (9th Cir.1974) (Cal.Penal Code § 847.5, which describes the same UCEA procedure set forth in KRS 440.270(1) but also provides that "a bondsman or other person who is bail for a fugitive admitted to bail in another state who takes the fugitive into custody, except pursuant to an order issued under this section, is guilty of a misdemeanor" abolished bondsman's common law right to make warrantless arrest).

Appellant's second due process claim that KRS 440.270(2) deprives him of his property by subjecting him to bond forfeiture without due process of law is so frivolous as to approach inanity. It was Allegheny Mutual's bond that was forfeited, not Appellant's. Regardless, the statute only requires the bondsman to comply with the procedures set forth in KRS 440.270(1)—procedures designed to protect the due process rights of the alleged fugitive from bail.

## II. PUBLIC DUTY.

KRS 503.040, titled "execution of public duty" provides:

(1) Unless inconsistent with the ensuing sections of this code defining justifiable use of physical force or with some other provisions of law, conduct which would otherwise constitute an offense is justifiable *when .it is required or authorized* by a provision of law imposing a public duty or *by a judicial decree.*

(2) The justification afforded by subsection (1) applies when:

(a) *The defendant believes his conduct to be required or authorized by* the judgment or direction of *a competent court or tribunal* or in the lawful execution of legal process, *notwithstanding lack of jurisdiction of the court or defect in the legal process;* or

. . . .

(Emphasis added.)

Appellant claims that his warrantless apprehension of Barkley was justified under KRS 503.040(1) by the orders of the Hamilton County Municipal Court. He is mistaken. As explained *supra,* that court did not order Appellant to apprehend Barkley. The capias was issued to the police chief of Cincinnati and even he was without authority to execute the capias outside the jurisdiction where it was issued. *Street v. Cherba,* 662 F.2d 1037, 1039 (4th Cir.1981) (citing Restatement (Second) of the Law of Torts § 129 (1965)); 5 Am.Jur.2d *Arrest* § 36. *Cf. Bowlin v. Archer,* 157 Ky. 540, 163 S.W. 477, 479 (1914) ("[T]he officer of one sovereignty can exercise no authority whatever in the other."). The police chief could only have obtained Barkley's return to Ohio by resort to KRS 440.270(1), but apparently

chose not to do so. Nor did the bond forfeiture order and notification authorize Appellant or his employer, Trimble, to violate KRS 440.270(2). It merely ordered Barkley's bond forfeited subject to reinstatement if he was subsequently produced in court. Thus, the orders of the Hamilton County Municipal Court provided no authority for Appellant's actions in Kentucky.

Alternatively, Appellant asserts that he was entitled to a jury instruction on the justification afforded by KRS 503.040(2)(a) because he believed that the orders of the Ohio court authorized him to apprehend Barkley and return him to Ohio. Again, he is mistaken. KRS 503.040(2)(a) was adopted verbatim from section 3.03(3)(a) of the Model Penal Code. Comment 4 to that section of the Model Code clarifies that the defense applies only when the mistaken belief is the result of a lack of jurisdiction of the court or a defect in the legal process.

> Subsection (3) extends the justification of Subsection (1) to two situations in which a person is excused although mistaken about legal authorization. The first occurs when the actor believes his conduct to be required or authorized by a competent court or tribunal, or believes that he is executing lawful process, *but the court lacks jurisdiction or there is some unknown defect in the legal process.* The technicalities that control the question of jurisdiction and the legality of the process should not also control the defense of justification....

*Model Penal Code* § 3.03 cmt. 4 (1985) (emphasis added). Likewise, the 1974

Commentary to KRS 503.040 explains that the justification is available to "a defendant who acts under a court order *that is defective because of lack of jurisdiction* but that is believed to authorize the action taken." (Emphasis added.) Thus, in *Basham v. Commonwealth,* Ky., 675 S.W.2d 376 (1984), wiretap evidence otherwise illegally obtained in violation of Kentucky's eavesdropping statute, KRS 526.020, was held admissible because the wiretap had been authorized by an order of a federal district court judge. *Id.* at 379. Here, the orders of the Ohio court were not invalid because of lack of jurisdiction or a defect in legal process. They simply did not purport to authorize the conduct for which Appellant was convicted.

## III. MISTAKE OF LAW.

Appellant asserts that his conduct was authorized under the law as stated in the passage quoted *supra* from *Taylor v. Taintor.* In fact, this ancient obiter dictum [2] may once have accurately described the law of Kentucky. *See* KRS 425.080 ("For the purpose of surrendering the defendant, the bail may, *at any time or place,* arrest him ....") (emphasis added), *repealed by* 1976 Ky. Acts, ch. 91, § 45; *Miller v. Commonwealth,* 192 Ky. 709, 234 S.W. 307, 308 (1921) ("In the contract between the sureties and the state, there is also an implied covenant on the part of the latter that it will not interfere with the right of the sureties to retain the principal in their custody, nor with their right to discharge themselves as bail for him, by taking him into actual custody and surrendering him to the court, or delivering him to the jailer ...."). *But see* Carroll's Code of Practice in Criminal Cases

---

**2.** The actual holding of the case was that a Connecticut bail bondsman was not exonerated from forfeiture where he had permitted his principal to leave Connecticut and reside in New York from where he was subsequently extradited to Maine and convicted and sentenced for another offense and thus, not subject to reapprehension by the bondsman. 83 U.S. at 373–74.

§ 87 (1948) ("For the purpose of surrendering the defendant the bail, at any time before judgment against them, and *at any place within the State* may arrest him ....") (emphasis added), *repealed by* 1962 Ky. Acts, ch. 234, § 61(2).

Even if accurate at one time, the *Taylor* dictum clearly does not describe the present law of Kentucky as defined since 1976 in KRS 440.270(2). Additionally, the *Taylor* dictum does not state a constitutional principle or interpret a federal statute so as to preempt state law. *Fletcher v. Weir*, 455 U.S. 603, 605, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490 (1982) (principles that evolved from federal decisional law and are not based on constitutional principles may be followed or disregarded by the states so long as the state procedure as a whole remains consistent with due process of law). The United States Court of Appeals for the Sixth Circuit recently commented on the *Taylor* dictum in a case arising, coincidentally, in Ohio:

> [N]othing the majority or minority said [in *Taylor*] was intended to mean that the Extradition Clause or any other provision of the Constitution authorizes bondsmen to violate the law of a state or provisions of the federal Constitution in an effort to apprehend a bail jumper. The language from the majority opinion ... is not meant as an interpretation of federal constitutional law. It does not create for bondsmen "a clearly established right" under the Extradition Clause and hence does not shield a bondsman under federal law from arrest for violation of the law of Ohio in apprehending bail jumpers. The quoted language from *Taylor v. Taintor* appears to be simply an effort to state the common law powers of bondsmen, as found in *Blackstone,* Chapter 8, and several other sources. We find nothing in *Taylor or* in Chapter 8 of *Blackstone,* that would authorize the broad power of a bonds-

man at common law to "break the law" as claimed by Lund..... The bondsman may be authorized under the law of the state where a bond is made to retrieve bail jumpers, but he must abide by the law of the state he enters to pursue his fugitive. Federal constitutional law does not preempt state law or immunize bondsmen from violations of local law.

*Lund v. Seneca County Sheriff's Dep't,* 230 F.3d 196, 198 (2000) (emphasis in original). We agree and conclude that the *Taylor* dictum does not preempt KRS 440.270(2).

Alternatively, Appellant claims that his conduct should be excused as a mistake of law because he actually believed that the *Taylor* dictum was the law of Kentucky and was unaware of the existence of KRS 440.270(2). This latter assertion was somewhat bolstered by the testimony of the Newport police officers who freed Barkley on the night of November 17, 1997, and the judge of the Hamilton County Municipal Court, a graduate of a Kentucky law school and a member of the Kentucky Bar Association, all of whom also disclaimed any knowledge of the existence of KRS 440.270(2). KRS 501.070, titled "liability; ignorance or mistake," provides in pertinent part:

> (1) A person's ignorance or mistake as to a matter of fact or law does not relieve him of criminal liability unless:
>
> (a) Such ignorance or mistake negatives the existence of the culpable mental state required for commission of an offense; or
>
> ...
>
> (3) A person's mistaken belief that his conduct, as a matter of law, does not constitute an offense does not relieve him of criminal liability, *unless such mistaken belief is actually founded upon an official statement of the law,*

*afterward determined to be invalid or erroneous, contained in:*

. . .

(b) *A judicial decision, opinion or judgment;* or

. . .

(Emphasis added.) Thus KRS 501.070 twice reiterates the ancient and famous common law maxim, *"ignorantia juris non excusat,"* or ignorance of the law is no excuse. *See Jellico Coal Mining Co. v. Commonwealth,* 96 Ky. 373, 29 S.W. 26, 27 (1895) ("In point of antiquity, [the maxim] dates back to a time whereof the memory of man runneth not to the contrary . . . .").[3] The statute then describes two exceptions to the maxim: subsection (1)(a) allows ignorance or mistake of law to negate the culpable mental state required for conviction of the offense; and subsection (3) excuses liability for acts committed in reliance upon official but erroneous statements of the law. Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 2–5(c)(1) (1998).

The initial problem with the application of subsection (1)(a) is that KRS 440.270(2) does not recite a culpable mental state as required for the conviction of a criminal offense. KRS 501.030(2) ("A person is not guilty of a criminal offense unless . . . [h]e has engaged in such conduct intentionally, knowingly, wantonly or recklessly as the law may require, with respect to each element of the offense, except that this requirement does not apply to any offense which imposes absolute liability, as defined in KRS 501.050."). KRS 501.050 provides:

A person may be guilty of an offense without having one (1) of the culpable

mental states defined in KRS 501.020 [defining intentionally, knowingly, wantonly and recklessly] only when:

(1) The offense is a violation or a misdemeanor as defined in KRS 500.080 and no particular culpable mental state is included within the definition of the offense; or

(2) The offense is defined by a statute other than this Penal Code and the statute clearly indicates a legislative purpose to impose absolute liability for the conduct described.

 As Professors Lawson and Fortune note, strict liability crimes are commonplace but "largely limited to offenses with minor penalties—traffic crimes, building, fire, health code violations, etc."

Nonetheless, imposition of punishment in the absence of fault (i.e., "mens rea," "intent," "guilty mind," or "scienter") is generally regarded as the exception rather than the rule in our jurisprudence, especially for crimes with substantial penalties.

Lawson & Fortune, *supra,* at § 2–1(b)(1). A violation of KRS 440.270(2) authorizes imprisonment for up to five years and a fine of up to $10,000. KRS 532.060(2)(d); KRS 534.030(1). These are not minor penalties and we are unable to conclude that the statute clearly indicates a legislative purpose to impose absolute liability. Thus, we turn to KRS 501.040:

Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with re-

---

3. For an historical tracing of the maxim, *see* Edwin R. Keedy, *Ignorance and Mistake in the Criminal Law,* 22 Harv. L.Rev. 75 (1908). The acerbic remark that "[e]verybody is presumed to know the law except His Majesty's judges, who have the Court of Appeal set over them to put them right," is attributed to Judge Maule. Paul K. Ryu & Helen Silving, *Error Juris: A Comparative Study,* 24 U. Chi. L.Rev. 421, 423 (1957) (citing Glanville Williams, *Criminal Law, the General Part* 386 (1953)).

spect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state.

■ Thus, a violation of KRS 440.270(2) would require at a minimum that the accused recklessly "arrest[ed], detain[ed], imprison[ed] or remov[ed]" the victim with knowledge that a warrant had not been issued by a Kentucky judicial officer.[4] There was no evidence that either of these culpable mental states were negated by Appellant's claimed mistake of law. The clear import of his testimony was that he intended to detain Barkley and that he knew that a warrant for Barkley's arrest had not been issued by a Kentucky judge. His only "mistake of law" claim was that he believed his warrantless detention of Barkley was lawful. The trial judge correctly concluded that KRS 501.070(1)(a) has no application to this case.

■ The "official statement" exception in KRS 501.070(3) to the *ignorantia juris* maxim only requires a mistaken belief "actually founded" on an official though erroneous statement of the law. As noted in the 1974 Commentary, the requirement is "actual reliance," a subjective standard. In that respect, our statute differs from the Model Penal Code and those state statutes that require "reasonable reliance," an objective standard. Model Penal Code § 2.04(3)(b). *See also, e.g.,* Ark.Code Ann. § 5–2–206(c) (1975); Haw.Rev.Stat. § 702–220 (1972); 720 Ill. Comp. Stat. 5/4–8 (1962); Kan. Stat. Ann. § 21–3203(2) (1970) ("reasonable belief"); Me.Rev.Stat. Ann. tit. 17–A, § 36 (1981); Mo.Rev.Stat. § 562.031.2(2) (1979); Mont.Code Ann. § 45–2–103(6)(c) (1973) ("reasonable belief"); N.J. Stat. Ann. § 2C:2–4 (1978);

N.D. Cent.Code § 12.1–05–09 (1973); Tex. Penal Code Ann. § 8.03(b) (1974); Utah Code Ann. § 76–2–304 (1953) ("reasonable belief"). We note at this point that the Court of Appeals held in *Cheser v. Commonwealth,* Ky.App., 904 S.W.2d 239 (1994), that the defense of mistake of fact, also included in KRS 501.070, required that the mistake be reasonable. *Id.* at 242 (citing *State v. Freeman,* 267 N.W.2d 69, 69 (Iowa 1978)). *Freeman,* however, was decided on common law principles, not statutory language. Since our statute creates a subjective standard, not an objective one, with respect to mistakes of both law and fact, we overrule *Cheser* to the extent that it requires application of an objective standard.

■ Under the subjective standard established in KRS 501.070(3), Appellant's testimony that he was unaware of the existence of KRS 440.270(2) and that he "actually believed" that his actions were authorized by *Taylor v. Taintor* entitled him to a jury instruction on "mistake of law" under KRS 501.070(3)(b). *Mishler v. Commonwealth,* Ky., 556 S.W.2d 676, 680 (1977) (every issue of fact raised by the evidence, no matter how preposterous, must be submitted to the jury on proper instructions: "[I]t is the privilege of the jury to believe the unbelievable if the jury so wishes."). Because the trial judge refused Appellant's tendered instruction on mistake of law, we must reverse Appellant's conviction of violating KRS 440.270(2) and remand for a new trial. If the evidence is the same on retrial, the following specimen or similar instruction would accurately frame the offense as qualified by a "mistake of law":

You will find the defendant guilty of Bondsman Detaining without Warrant

---

4. Knowledge, of course, can be proven by circumstantial evidence. *Love v. Commonwealth,* Ky., 55 S.W.3d 816, 825 (2001).

under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about November 17, 1997, and before the finding of the indictment herein, he intentionally arrested or detained Allen Wayne Barkley;

AND

B. That when he did so, he knew that a warrant for Barkley's arrest had not been issued by a judge of a Kentucky circuit or district court.

Provided, however, you will find him not guilty under this instruction if you believe from the evidence that at the time he arrested or detained Barkley, he actually, though mistakenly, believed that language contained in the 1872 United States Supreme Court case of *Taylor v. Taintor* authorized him to apprehend Barkley in Kentucky without a warrant for the purpose of delivering him to Ohio authorities.

At trial, Appellant was also not permitted to read to the jury the passage from *Taylor,* quoted *supra,* upon which he claimed to rely. During guilt phase deliberations, the jury requested a copy of *Taylor.* This request was refused, no doubt because the court's instructions did not include a "mistake of law" proviso. On retrial, Appellant shall be permitted to apprise the jury of the "official statement of the law" upon which he claims to have relied.

Accordingly, we affirm the Court of Appeals with respect to Appellant's convictions and sentences for assault in the fourth degree and wanton endangerment in the second degree, and reverse the Court of Appeals with respect to Appellant's conviction of "bondsman detaining without warrant," and remand that charge to the Campbell Circuit Court for a new trial in accordance with the contents of this opinion. The reversal of Appellant's conviction and sentence for violating KRS 440.270(2) renders the Commonwealth's cross-appeal moot.

All concur.