**Homer Ray LAWSON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–CA–000472–MR.

Court of Appeals of Kentucky.

March 7, 2014.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, W. Bryan Jones, Assistant Attorney General, Frankfort, KY, for appellee.

Before NICKELL, THOMPSON and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Homer Ray Lawson appeals from his conviction for failure to register as a sex offender. He claims the trial court erred by refusing to instruct the jury on mistake of law. For the following reasons, we affirm.

In 2002, Lawson was convicted of one count of first-degree burglary and five counts of first-degree unlawful imprisonment. Two of the counts of unlawful imprisonment involved minors. He received a sentence of ten years' imprisonment.

On December 1, 2010, Lawson was released after completing his sentence. Under the Sexual Offender Registration Act ("SORA"), Lawson was required to be placed on the registration system for adults who have committed sex crimes or crimes against minors. Before his release,

Lawson was provided with a Kentucky sex offender registration responsibility form which explained his affirmative duties under SORA, including his duty to inform his local probation and parole office before moving. The form contained the following statements:

If my residence changes within the same county, I must notify the local probation and parole office *on or before the date of the change of address....* I must register any address at which I reside for at least 14 consecutive days or 30 aggregate days during any calendar year.

Lawson complied with SORA by reporting to the local probation office upon his release and registering his parents' address in London, in Laurel County, as his residence. Later, after receiving a new form in the mail, he mailed in the form and again registered his parents' address.

On March 23, 2011, Lawson notified a probation and parole officer he had deactivated an email address and asked for a correction to his listing on the registry which erroneously indicated he had a rape conviction. On the Kentucky sex offender registry form he signed on that date, he again listed his parents' address as his residence. The form included the following language: "I also understand that prior to any change of address, I am required to notify the local probation and parole office."

In June 2011, Lawson became employed at a job twenty miles from his parents' residence. He began staying with his girlfriend at her home in Keavy, also in Laurel County, because he did not own a car and it was easier for him to arrange transportation to work. His girlfriend's father, who was also his co-worker and lived close by, drove Lawson to and from work. On the weekends, Lawson often returned home to his parents' residence.

In late August 2011, London City Police Officer Joe Smith was performing address verification checks in Laurel County for registered offenders. Officer Smith went to Lawson's listed residence, learned Lawson was not living there anymore and was informed of Lawson's current Keavy address.

On August 30, 2011, Officer Smith arrested Lawson outside his Keavy residence after he returned from work. Lawson admitted to staying in Keavy most of the time for the past couple of months. When asked why he had not registered, he indicated he intended to do so when he received his modification form in the mail.

Lawson was indicted for failure to comply with the registration system for adults who have committed sex crimes or crimes against minors and for being a second-degree persistent felony offender ("PFO"). At the jury trial, the Commonwealth presented testimony from Probation and Parole Officer Cheryl Cooper and Officer Smith.

Cooper testified Lawson signed an updated Kentucky sex offender registry form at the probation and parole office on March 23, 2011, but stated she did not read the form to him or explain his duties to update his registry address before he moved. This form was admitted into evidence.

Officer Smith testified Lawson admitted he had to report, but indicated he had not received his modification form in the mail yet. Officer Smith stated Lawson indicated it was acceptable for him to wait on updating his address on the registry until he received the form.

Lawson testified he stayed with his girlfriend so he would have a ride to work, but often returned to his parents' house. Although he was aware he had to register a new address if he moved and intended to register his new address, he was not aware he had to register a new address on or before the date of the move and did not believe he was beyond the time limit for registering his new address. He testified he believed the periodic modification forms he received in the mail were for the purpose of registering a new address and he was not obligated to register a new address until he received a new modification form. He admitted receiving registry forms from the Department of Corrections containing information on time limits for registering a new address, having the capacity to read them and having read them, but indicated he must not have read the forms carefully because he did not realize he was obligated to update his registered address prior to receiving a new form.

During cross-examination, Lawson acknowledged receiving the Kentucky sex offender registration responsibility form before his release and the form was admitted into evidence. He also acknowledged signing an updated Kentucky sex offender registry form on March 23, 2011. At the Commonwealth's request, Lawson read portions of these forms that stated registrants were required to register a new address on or before the date they moved. Lawson was able to read these provisions and explain they obligated him to register his new address before he moved. However, Lawson's testimony did not establish he understood this obligation before he was arrested.

Lawson tendered instructions on the affirmative defenses of mistake of fact and law. Both proposed instructions stated as follows:

> you shall not find [Lawson] guilty ... if at the time he committed the offense (if he did so), he reasonable believed that the time period within which he was to register a new or secondary address had not yet expired and therefore did not

form the intention to commit failure to comply with sex offender registration requirements.

Lawson argued he was mistaken as to when he was obligated to register his new address and an instruction on mistake was appropriate because no one was able to testify this obligation was read or explained to him. Lawson argued this legal defense negated the "knowingly" element of the crime and would be helpful to the jury. The trial court rejected these instructions, determining that because Lawson was advised of his obligation through the forms he received, no basis supported an instruction on mistake.

The court instructed the jury to convict Lawson if it found he had a prior conviction for unlawful imprisonment, was over eighteen years of age, changed his address and "[w]hen he did so, if he did, he knowingly failed to notify the Probation and Parole Office on or before the date of his change of residence address." The court also instructed the jury as to the relevant statutory definitions.

The jury convicted Lawson of failure to comply with the registration system. During the penalty phase of the trial, the jury acquitted Lawson on the PFO charge. The jury recommended a sentence of four years' imprisonment and Lawson was sentenced in accordance with this recommendation. Lawson timely appealed.

On appeal, Lawson argues he was entitled to a jury instruction on the affirmative defense of mistake of law pursuant to KRS[1] 501.070(1), because his ignorance of the law negated the "knowingly" mental state required for conviction for failure to register.

■ We examine alleged errors regarding jury instructions as a question of law under a *de novo* standard of review. *Hamilton v. CSX Transp., Inc.,* 208 S.W.3d 272, 275 (Ky.App.2006). "A trial court is required to instruct the jury on every theory of the case that is reasonably deducible from the evidence." *Fredline v. Commonwealth,* 241 S.W.3d 793, 797 (Ky. 2007). This includes instructing the jury on statutory defenses, including mistake of law, if some evidence was introduced which would permit the finding of such a defense. *Commonwealth v. Adkins,* 331 S.W.3d 260, 263 (Ky.2011).

Under SORA, adults who have committed sex crimes or certain enumerated crimes against minors, including false imprisonment, are required to register with a probation and parole office in the county in which they will reside after their release. KRS 17.500(3)(a)2; KRS 17.510(2). They are also required to inform probation and parole of any change in residence. KRS 17.510(10). A residence is defined as a place where a person sleeps; a person can have more than one residence so long as each address is registered. KRS 17.500(9). Under 502 KAR[2] 31:020 § 5(3), the Department of Kentucky State Police is required to mail an address verification form to the last known address of each lifetime registrant residing in Kentucky at least every ninety days.

Because Lawson began staying with his girlfriend and her home was within the same county as his other residence, he was required to register this address "on or before the date of the change of address, with the appropriate local probation and parole office in [Laurel county]." KRS 17.510(10)(a). KRS 17.510(11) provides: "Any person required to register under this section who *knowingly violates* any of the provisions of this section or prior law

---

1. Kentucky Revised Statutes.

2. Kentucky Administrative Regulations.

is guilty of a Class D felony for the first offense[.]" (Emphasis added).

The Kentucky Penal Code defines "knowingly" as follows: "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." KRS 501.020(2). This definition is even narrower than the Model Penal Code's requirement of actual knowledge. *Martin v. Commonwealth*, 96 S.W.3d 38, 62 (Ky.2003).

The statute setting forth the possible defense for mistake is KRS 501.070. This statute provides, in relevant part:

> (1) A person's ignorance or mistake as to a matter of fact or law does not relieve him of criminal liability unless:
>
> > (a) Such ignorance or mistake negatives the existence of the culpable mental state required for commission of an offense[.]
>
> . . . .
>
> (3) A person's mistaken belief that his conduct, as a matter of law, does not constitute an offense does not relieve him of criminal liability, unless such mistaken belief is actually founded upon an official statement of the law, afterward determined to be invalid or erroneous, contained in:
>
> > (a) A statute or other enactment; or
> >
> > (b) A judicial decision, opinion or judgment; or
> >
> > (c) An administrative order or grant of permission; or
> >
> > (d) An official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

Few reported cases have applied this statute. The reason for this dearth of authority is undoubtedly the long-standing concept that ignorance of the law is no excuse. *Jellico Coal Mining Co. v. Commonwealth*, 96 Ky. 373, 29 S.W. 26, 27 (1895).

The commentary to the 1974 adoption of the Kentucky Penal Code, KRS Chapters 500 to 534, demonstrates the correct interpretation [3] of KRS 501.070(1):

> Subsection (1) of this section starts with the traditional proposition that ignorance or mistake of fact or law provides no relief for criminal liability. It then recognizes three exceptions to this general proposition: subsection (1)(a), ignorance or mistake of fact or law is sufficient to relieve one of criminal liability if it negatives the culpable mental state essential to commission of the offense charged. For example, if D picks up and carries away a coat belonging to V under a mistaken belief that the coat belongs to his wife, he cannot be convicted of larceny. His mistake of fact negatives the culpable mental state essential to the offense (intent to steal) and relieves him of liability. **It should be noted that the ignorance or mistake "of law" referred to in this subsection relates to legal concepts such as property ownership, effective consent and agency, and not to the criminal or non-criminal nature of conduct, a matter that is treated under subsection (3)[.]** . . .
>
> Subsection (3) reaffirms the long-established principle that knowledge of the illegality of conduct is not essential to the commission of an offense. After

---

**3.** The commentary to the Penal Code may be used as an aid in construing its provisions.

KRS 500.100.

adoption of the general principle, subsection (3) creates an exception for a mistaken belief that is based upon actual reliance on an existing provision of law, later determined to be an invalid or erroneous one.

Relationship to Pre-existing Law

With respect to ignorance or mistake of fact, subsections (1) and (2) make no substantial change in pre-existing principles. See Roberson's New Kentucky Criminal Law and Procedure 38–40 (2d ed.1927). With respect to ignorance or mistake of law, pre-existing law starts with the age-old maxim that ignorance of law excuses no one. *Jellico Coal Mining Co. v. Commonwealth*, 96 Ky. 373, 29 S.W. 26 (1895). To this broad principle the Court of Appeals recognized an exception when the ignorance or mistake of law negated an element that was required for commission of an offense. *Rand v. Commonwealth*, 176 Ky. 343, 195 S.W. 802 (1917). Again no change is made in the substance of this law by KRS 501.070. The general principle is adopted by subsection (3) and the exception is a part of subsection (1).

Ky. Crime Comm'n, Commentary, KRS 501.070 (1974) (emphasis added).

In this case, Lawson has pointed to no mistake of **fact** that would excuse his failure to pre-register a change of residence. Mistake of fact relates, in other words, to some fact in the case, *e.g.*, the Commentary's hypothetical husband who mistakenly picks up a coat other than that belonging to his wife. Or, the real example of a young mother of a newborn child who presents evidence that she thought her child was stillborn and she had no intent to kill the child. *See Cheser v. Commonwealth*, 904 S.W.2d 239 (Ky.App.1994), *overruled on other grounds by Walker v. Commonwealth*, 127 S.W.3d 596 (Ky.2004).

■ As to mistake of **law**, Lawson's claimed ignorance is claimed ignorance of the obligation to pre-register a move. As noted in the quoted Commentary, this claim does not fall under subsection (1) as a "mistake of law," such as a mistake regarding a "legal concept[ ] such as property ownership, effective consent and agency[.]" Rather, this claim relates to the criminal or non-criminal nature of conduct, and is governed under subsection (3).

■ Under subsection (3), the mistaken belief of law must be "actually founded" upon an official statement of the law later determined to be erroneous, whether statute, judicial decision, administrative order, or statement of an official charged with enforcing the law, such as a parole officer. *See Walker*, 127 S.W.3d at 608–09 (holding that defendant was entitled to mistake of law instruction based on reliance on 1872 published opinion). Lawson does not argue that he relied on something or someone official. This may be because (1) he received a form on two occasions, December 2010 and March 2011, prior to his change of residence, in May or June 2011, that advised him of the requirement to pre-register a move; (2) he signed a form that notified him of his obligation to pre-register; and (3) his probation officer told him of the necessity to pre-register. His only basis for his claimed mistake is that he "thought" he had to send in his new address when he got the new form. He points to no authority for his claimed mistake of law.[4] Lawson was not, therefore,

---

4. *Canada v. Commonwealth*, 2012–CA–001282–MR, 2013 WL 1919406 (Ky.App., May 10, 2013), an unpublished opinion of this court, does not require a different result. That opinion addresses a defendant's entitle-ment to a directed verdict for "knowingly" violating the obligation to "pre-register" a change of address. The result in *Canada* is very factually based. Canada knew of his legal obligation to "pre-register" a move,

entitled to an instruction for mistake under KRS 501.070.

The Laurel Circuit Court's judgment is affirmed.

NICKELL, Judge, concurs.

THOMPSON, Judge, dissents, without separate opinion.

tried to do so, but was unable to contact his probation officer at the phone number she had given him. The following passage is telling: "At trial, Canada testified that he had relied on the instructions of his parole officer, Sampson. Sampson's testimony corroborated that of Canada. She told him to call her before changing his registration." 2013 WL 1919406, at *3. The court elaborated on Canada's predicament of being forced to move and being unable to contact his parole officer. *Id.* Most tellingly, for a month prior to the move, Canada informed Sampson of the pending move, albeit not the location, and on the week of the move, reported that fact to Sampson's office on a Friday, and turned himself in on the following Monday. The court in *Canada* nowhere discusses the applicability and interpretation of KRS 501.070. Instead, the court addresses whether the trial court erred in its failure to grant a directed verdict. The present case is factually distinguishable, in that Lawson moved in May or June 2011, and only "reported" the move when he was caught, August 30, 2011.